Donald C. SLAWSON, Plaintiff,

v.

DOME PETROLEUM CORPORATION, Defendant and Third Party Plaintiff,

v.

MORAN BROTHERS, INC., Third Party Defendant.

Civ. A. No. 82–1294.

United States District Court, D. Kansas.

Jan. 28, 1983.

Robert L. Howard, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for plaintiff.

Robert Martin, Martin W. Bauer, Martin, Pringle, Davis, Oliver & Triplett, Wichita, Kan., for defendant and third party plaintiff.

Hal Meltzer, Wichita, Kan., Andrews & Davis, Oklahoma City, Okl., for third party defendant.

## ORDER DENYING THIRD–PARTY DEFENDANT'S MOTION TO DISMISS

THEIS, District Judge.

This is a declaratory judgment action in which the plaintiff seeks to have the provisions of a contract construed. A brief history of the dispute is as follows. The plaintiff, a Kansas resident, entered into certain contracts on July 31, 1980, and September 4, 1980, with Ferguson Oil & Gas Company, Incorporated, for the drilling of a test well in Oklahoma. The defendant, Dome Petroleum Corporation (Dome), a North Dakota corporation, with its principal place of business in Colorado, purchased Ferguson Oil & Gas Company on April 1, 1980. The originally projected cost of the test well was $1,988,500, but the actual cost of the well has now increased to an alleged $8,112,500.40. Because the plaintiff (Slawson) claims that he is obligated by his contracts

to pay his proportionate share of only the fair, reasonable, and necessary costs for the well, and because he alleges that the massive cost overrun was caused by Dome's failure to act, in accordance with its contractual duties, as a reasonable and prudent operator, Slawson seeks to have the contracts construed, the reasonable and necessary costs and expenses determined, and the rights and liabilities of the parties settled. Jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332, and the action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

Dome has filed an answer; a counterclaim against plaintiff for his unpaid share of the drilling costs; and a third-party complaint against Moran Brothers, Incorporated (Moran), a Texas corporation with its principal place of business in Texas, on an indemnity theory. Moran did the actual drilling of the well, and Dome argues that if plaintiff is entitled to recover from Dome for any failure to act as a reasonable and prudent operator, Dome should recover the same amount from Moran for Moran's failure to act as a reasonable and prudent operator. Jurisdiction over the third-party complaint is also based on diversity of citizenship. 28 U.S.C. § 1332.

Moran has not filed an answer to the third-party complaint, but has instead moved to dismiss it on the ground that this Court lacks in personam jurisdiction over Moran. The case is currently before the Court for a resolution of this motion to dismiss.

## I. Jurisdictional Facts

As has previously been mentioned, Moran is a Texas corporation with its principal place of business in Texas. Moran, however, has been continuously authorized by the Kansas Secretary of State to do business in Kansas since January 29, 1981, and has appointed as its resident agent for service of process The Corporation Company, Inc. of Topeka, Kansas. Service of the third-party complaint was had on Moran's resident agent on June 8, 1982.

Moran alleges that the contract under which it did the actual drilling of the test well was negotiated in Oklahoma and Texas; that the contract was executed in Oklahoma; that Moran's performance under the contract was rendered in Oklahoma; and that Moran has at no time dealt or negotiated directly with plaintiff, the only Kansas resident involved in this litigation. Moran has also provided a sworn and notarized affidavit of James E. Suttle, Moran's vice-president of marketing, that contains the usual assertions of an utter lack of contacts with the State of Kansas. This affidavit does state, however, that Moran has drilled at least one well in Kansas, pursuant to which it became authorized to do business in Kansas and appointed a resident agent.

## II. Motion to Dismiss

Moran urges that dismissal for want of personal jurisdiction is required by presenting a sequential argument that attempts to show the inapplicability of every Kansas statute under which Moran might have been served. This argument consists of three steps: (1) that Moran cannot be served through the Kansas long arm statute, K.S.A. § 60–308(b); (2) that Moran cannot be served under the Kansas Foreign Corporation statutes, K.S.A. §§ 17–7301 through 17–7308; and (3) even if service is authorized, Moran does not have the due process minimum contacts with the State of Kansas required by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny.

These steps of the argument can be briefly summarized as follows. The argument that the long arm statute is incapable of satisfaction in this case depends on Moran's assertion that it has had no contacts with Kansas or any Kansas resident in the context of the subject matter of this suit, and that the various provisions subjecting defendants to extra-territorial service of process therefore cannot be satisfied.

The argument that service on Moran cannot be accomplished under the foreign corporation statutes is slightly more complex. First, Moran argues that the "consent to

suit" required of authorized corporations under K.S.A. § 17–7301(b) only permits service to be effective when delivered to the Kansas Secretary of State pursuant to K.S.A. § 17–7307. Second, Moran argues that K.S.A. § 17–7307(c) is a jurisdictional hurdle requiring that the cause of action must arise either in Kansas out of the foreign corporation's business activities in Kansas or while the foreign corporation is actually doing business in Kansas. Third, Moran argues that the jurisdictional hurdles of K.S.A. § 17–7307(c) are not met in the present case, that service of process on the Secretary of State is therefore inappropriate and Moran's "consent to suit" inoperative on these facts, and that service on Moran's resident agent is therefore unauthorized by statute and ineffectual.

The final step of the argument, that the due process minimum contacts requirements of *International Shoe* are incapable of satisfaction in this case, consists of the assertion by Moran that any exercise of in personam jurisdiction must comport with those requirements, and that Moran's contacts with Kansas are insufficient in any event to cause it to be subjected to the jurisdiction of this Court.

### III.  Kansas Foreign Corporation Statutes

The provisions of the Kansas Corporation Code regulating service of process on foreign corporations unfortunately are not a model of clarity, and this Court has been unable to locate any cases from the Kansas Supreme Court or Court of Appeals that authoritatively interpret the statutory scheme. A rational system for the regulation of service on foreign corporations may nevertheless be discerned when the scattered statutory provisions are viewed *in pari materia.*

Foreign corporations are specially regulated by K.S.A. §§ 17–7301 through 17–7308. There is no dispute that Moran is a foreign corporation as defined in K.S.A. § 17–7301(a). K.S.A. § 17–7301 prohibits foreign corporations from engaging in any business in Kansas until they are authorized to do so by the Secretary of State, *id.* sub.

§ (b). An application for authorization to do business in Kansas must:

"[b]e accompanied by the written consent of the corporation, irrevocable, that actions may be commenced against it in the proper court of any county where there is proper venue by the service of process on the secretary of state as provided for in K.S.A. [§] 17–7307 and stipulating and agreeing that such service shall be taken and held, in all courts, to be as valid and binding as if due service had been made upon the president and secretary of the corporation." *Id.*

Foreign corporations are also required to state the location of their registered offices and the names of their resident agents as prerequisites to being authorized to do business in Kansas. *Id.* sub. § (b)(8).

K.S.A. § 17–7307 is titled "Actions by and against unqualified foreign corporations." Subsection (c) of this section reads as follows:

"(c) Any person having a cause of action against any foreign corporation, whether or not such corporation is qualified to do business in this state, which cause of action arose in Kansas out of such corporation doing business in Kansas, or arose while such corporation was doing business in Kansas, may file suit against the corporation in the proper court of a county in which there is proper venue. Service of process in any action shall be made in the manner prescribed by K.S.A. 60–304."

K.S.A. § 60–304, in turn, provides as follows in subsection (f):

"(f) *Foreign corporation resident agent.* Service of process or service of any notice or demand required or permitted by law to be served on a foreign corporation may also be made on such corporation by service thereof on the resident agent of such corporation. Whenever any foreign corporation authorized to transact business or transacting business without authority in this state shall fail to appoint or maintain in this state a resident agent upon whom service of legal process or service of any such notice or demand may be had, or whenever any such resident agent of

such corporation cannot with reasonable diligence be found at the registered office in this state, or whenever the certificate of authority of any foreign corporation shall be forfeited, then and in every such case the secretary of state shall be irrevocably authorized as the agent and representative of such foreign corporation to accept service of any process, or service of any notice or demand required or permitted by law to be served upon such corporation."

Also of significance in unraveling the statutory mystery are several other provisions. K.S.A. § 17–7305(c) provides that foreign corporations are "subject to the same provisions, judicial control, restrictions and penalties, except as otherwise provided in K.S.A. [§§] 17–7301 to 17–7308, inclusive, as corporations organized under the laws of this state." Domestic corporations are, of course, subject to service of process in the first instance in accordance with the provisions of K.S.A. §§ 17–6202; 60–304.

Confusion first enters the picture with the reference contained in K.S.A. § 17–7301(b) to "service of process on the secretary of state as provided for in K.S.A. 17–7307." No mention is made in K.S.A. § 17–7307 of service of process on the Secretary of State. Instead, the language in that section dealing with service of process merely directs that service in any action shall be made in accordance with K.S.A. § 60–304. Further confusion is created by the title of K.S.A. § 17–7307—the title implies that the provisions of the section apply only to actions by and against *unqualified* corporations, while the provisions of subsection (c) appear to apply to foreign corporations *whether or not qualified* to do business in Kansas.

■■■ The confusion can be ameliorated, however, by starting with the provisions of K.S.A. § 60–304(f) and working backwards through the statutory scheme. The implication of the previously quoted portion of K.S.A. § 60–304(f) is clear. Service of process on a foreign corporation's resident agent is always appropriate when such service is possible. If such service is impossi-ble, for whatever reason, *and regardless of whether the foreign corporation is authorized to do business in Kansas,* service is then permissible on the Secretary of State. The distinction drawn is between foreign corporations with servable resident agents and those without such agents—the distinction is not between foreign corporations authorized to do business in Kansas and those without such authorization.

Working backward through the statutory maze with this distinction in mind, the first step is K.S.A. § 17–7307(c). The last sentence of that subsection simply states that service shall be made in accordance with K.S.A. § 60–304, as just explained. The first sentence of K.S.A. § 17–7307(c), however, is ambiguous in that it is capable of two rational interpretations. First, the language may interpose a jurisdictional hurdle in the path of all suits against foreign corporations, regardless of whether authorized to do business in Kansas, by requiring that either (a) the cause of action arises in Kansas as a result of the business activities of the foreign corporation in Kansas, or (b) the cause of action, wherever arising, arises while the foreign corporation is actually doing business in Kansas. Second, the language may be permissive in nature, allowing suits against foreign corporations *not* authorized to do business in Kansas if requirement (a) or (b) above is satisfied. This interpretation construes the phrase "whether or not such corporation is qualified to do business in this state," as a rather oblique way of indicating that foreign corporations *not* authorized to do business in Kansas are those to which the legislature intended the succeeding words to apply.

To determine which of these interpretations was more likely to have been intended by the Kansas legislature, it is necessary to return to the beginning of the maze, K.S.A. § 17–7301(b). The correctness of the initial assumption that the operative distinction made by the legislature was between foreign corporations with servable resident agents and those without such agents is there confirmed. The Kansas legislature clearly intended for effective service to be

available on the resident agent in the first instance: the presence of such an agent in the case of authorized foreign corporations is assured by K.S.A. § 17–7301(b)(8). If, for whatever reason, the resident agent is unservable, the legislature assured that alternate service on the Secretary of State would be available in each and every case. If the foreign corporation happens to be authorized to do business in Kansas, an irrevocable agreement exists, executed by the foreign corporation's officers, to allow service on the Secretary of State; if the foreign corporation is not authorized to do business in Kansas, K.S.A. § 17–7307(c) specifies that service shall be had in accordance with the provisions of K.S.A. § 60–304(f), which statutorily permits service on the Secretary of State.

For K.S.A. § 17–7307(c) to fit into this legislative scheme in a rational way, the second (permissive) interpretation of its language offered above must be accepted as correct. If the language of the section is construed as permitting suits against unqualified foreign corporations in some circumstances, the section creates an important part of a rational and unified scheme of service of process on foreign corporations when coupled with K.S.A. §§ 17–7301(b) and 60–304(f). Such a construction removes the incongruity of the title of K.S.A. § 17–7307 that exists if the language of subsection (c) is construed to apply equally to authorized and unauthorized foreign corporations. The two alternative requirements found in subsection (c) are also made comprehensible by this construction. Because only unauthorized foreign corporations without resident agents are covered, the two requirements insure that the due process minimum contacts requirement of *International Shoe* will be satisfied, as they must be in this context where extra-territorial service would ordinarily be required. Likewise, the requirement for an irrevocable agreement to consent to service on the Secretary of State found in K.S.A. § 17–7301(b) and its interlocking reference to K.S.A. § 17–7307 is also rendered comprehensible by this construction: only if a foreign corporation loses its authorization to do business in Kansas must the requirements found in K.S.A. § 17–7307(c) be satisfied as a prerequisite to obtaining jurisdiction. If the foreign corporation is still authorized to do business in Kansas, but its resident agent cannot be served for whatever reason, service may be had directly under K.S.A. § 60–304(f), utilizing that section's statutory grant of authority to serve the Secretary of State.

In contrast, accepting the first (jurisdictional) interpretation of the language in K.S.A. § 17–7307(c) would render that section nonsensical and inconsistent with the remainder of the statutory scheme by causing service of process on the properly designated resident agents of foreign corporations that have properly qualified to do business in Kansas to be ineffective unless an extraneous and irrational jurisdictional hurdle is first cleared. Foreign corporations engaged in businesses such as Moran's that are properly qualified to carry on those businesses in Kansas and enjoy the privilege of appearing in the state at their pleasure to perform their inherently intermittent and short-term services for pay would, under this analysis, receive a qualified immunity from the jurisdiction of the Kansas courts never intended by the Kansas legislature and certainly not required by the due process clause of the United States Constitution. The conclusion is therefore inescapable that K.S.A. § 17–7307 only applies to those actions indicated in its title: actions by and against unqualified foreign corporations.

Because there is no dispute in this case that Moran is properly authorized by the Kansas Secretary of State to engage in business in the State of Kansas, and because there is no dispute that Moran has a properly appointed resident agent which was properly served with a summons and the third-party complaint in this action, K.S.A. § 17–7307 is inapplicable. Instead, service of process on Moran's resident agent is controlled by K.S.A. § 60–304(f).

*IV. Analysis of the Motion to Dismiss*

 Because service on Moran's resident agent is controlled by K.S.A. § 60–304(f), Moran's lengthy arguments that neither the Kansas long arm statute nor the foreign corporation statutes have been satisfied are inapposite and irrelevant. Moran's voluntary appointment of a resident agent in Kansas, coupled with the proper service of process on that agent in accordance with the requirements of K.S.A. § 60–304(f), leads this Court to conclude that Moran is subject to this Court's exercise of in personam jurisdiction over it.

■ This fact also casts considerable doubt on the relevance of Moran's arguments concerning the application and satisfaction of the due process minimum contacts requirement of *International Shoe* and its progeny. Even if the assumption is made that Moran must have suitable minimum contacts with the State of Kansas to validate this Court's assumption of personal jurisdiction over it on the facts of this case, however, this Court is satisfied that such minimum contacts exist. Moran is, and has been since early 1981, authorized to do business in Kansas. Moran admits that it has in fact conducted remunerative business activities in Kansas in the past, and Moran's maintenance of its authorized status, despite the provisions of K.S.A. § 17–7306 allowing the voluntary surrender of that status, supports the assumption that Moran would be willing and able to undertake the performance of remunerative business activities in Kansas in the future if the opportunity to do so presented itself. Moran is enjoying the benefits and protections of Kansas law because it has voluntarily retained the privilege, under Kansas law, of accepting and legally performing any advantageous drilling contract to be performed in Kansas that may come its way. The traditional notions of fair play and substantial justice required under *International Shoe's* interpretation of the due process clause are served by this Court's assumption of in personam jurisdiction over Moran.

IT IS THEREFORE ORDERED that the motion of third-party defendant Moran to dismiss the third-party complaint for lack of in personam jurisdiction is overruled.