No. 91,702

HEATH MERRIMAN, On Behalf of Himself and all Others Similarly Situated, *Appellant*, v. CROMPTON CORPORATION, UNIROYAL CHEMICAL COMPANY, INC., UNIROYAL CHEMICAL COMPANY LIMITED, FLEXSYS NV, FLEXSYS AMERICA L.P., BAYER AG, and BAYER CORPORATION, *Appellees*.

146 P.3d 162

434

Opinion filed November 9, 2006.

Rex A. Sharp, of Gunderson, Sharp & Walke, L.L.P., of Prairie Village, Kansas, argued the cause, and Isaac L. Diel, of Law Offices of Isaac L. Diel, of Bonner Springs, Kansas, Michael Flannery, of The David Danis Law Firm, P.C., of St. Louis, Missouri, Alexander E. Barnett, of The David Danis Law Firm, P.C., of New York, New York, Bonny E. Sweeney and Alreen Haeggquist, of Lerach Coughlin Stoia & Robbins, LLP, of San Diego, California, and Brian J. Robbins, of Robbins Umeda & Fink, LLP, of San Diego, California, were with him on the briefs for appellant.

D. Jarrett Arp, of Gibson, Dunn & Crutcher, LLP, of Washington, D.C., argued the cause, and James D. Slear, of the same firm, Stephen E. Robison and Lyndon W. Vix, of Fleeson, Gooing, Coulson & Kitch, LLC, of Wichita, Kansas, William D. Iverson and Michael J. Fanelli, of Covington & Burling, of Washington, D.C., and Daniel G. Swanson, of Gibson, Dunn & Crutcher, LLP, of Los Angeles, California, were with him on the briefs for appellees Flexsys America L.P. and Flexsys NV.

James A. Walker, of Triplett, Woolf & Garretson, LLC, of Wichita, Kansas, Amy W. Ray, William V. O'Reilly, and J. Andrew Read, of Jones Day, of Washington, D.C., and Brian K. Grube, of Jones Day, of Cleveland, Ohio, were on the briefs for appellees Bayer AG and Bayer Corporation.

Bill V. Hampton, Jr., of Hampton & Hampton, of Pratt, Kansas, Robert R. Eisenhauer, of Johnston & Eisenhauer, of Pratt, Kansas, and Ian Simmons and Benjamin G. Bradshaw, of O'Melveny & Myers, LLP, of Washington, D.C., were on the briefs for appellees Crompton Corporation, Uniroyal Chemical Company, Inc., and Uniroyal Chemical Company Limited.

The opinion was delivered by

LUCKERT, J.: Plaintiff Heath Merriman, a Kansas resident, appeals from the trial court and Court of Appeals' determinations that Kansas courts could not exercise personal jurisdiction over foreign corporations which allegedly conspired to fix the price of chemicals used in the out-of-state manufacturing of two tires which Merriman purchased from a Kansas retailer. The plaintiff argues these rulings should be reversed because the lower courts failed to recognize general jurisdiction over the foreign corporations, erroneously applied the Kansas long arm statute, and erroneously determined that the exercise of jurisdiction over these defendants would violate due process.

We reverse and remand.

## ALLEGATIONS REGARDING JURISDICTION

The plaintiff alleges he, and others similarly situated, paid an inflated price for tires purchased in Kansas because of an out-of-state price-fixing agreement entered into by the defendants. The plaintiff seeks class certification and treble damages pursuant to the Kansas Restraint of Trade Act, K.S.A. 50-101 *et seq.*, as well as attorney fees, costs, and other relief.

The various defendants, collectively known as "The Big Three" of rubber-processing chemical producers, separate into three groups of affiliated corporations: (1) Crompton Corporation which owns Uniroyal Chemical Company, Inc., and Uniroyal Chemical Company Limited; (2) Flexsys NV which owns Flexsys America, L.P.; and (3) Bayer AG which owns Bayer Corporation.

Collectively, the defendants are the principal suppliers of most of the rubber-processing chemicals sold in the United States. During the class period (1994 to present), plaintiff alleges that the defendants' sales of rubber-processing chemicals for use in tire manufacturing in the United States totaled more than $2.7 billion. The defendants sell the chemicals to major tire manufacturers such as Pirelli, Goodyear, Michelin, and Bridgestone. After the tires are manufactured, the tires proceed through the distribution stream, eventually arriving in retail facilities such as the one in Pratt, Kansas, where the plaintiff purchased two tires. It is undisputed that the tires purchased by the plaintiff were manufactured outside of Kansas; there is no allegation that the chemicals used in those tires were sold in Kansas.

However, the plaintiff estimates that the defendants derived revenues greater than $10.8 million from Kansas sales of tires containing their chemicals. The plaintiff also alleges that a portion of the revenues earned by the defendants are derived from chemical sales to a Goodyear manufacturing facility located in Topeka. According to records as part of the limited discovery allowed by the court relating to the jurisdiction issue, Flexsys shipped approximately $23 million of chemicals to the Topeka facility from 1998 to 2002 and Crompton shipped approximately $9.85 million in

chemicals between 1994 and 1998. Bayer also sold products to the Topeka Goodyear facility during a portion of the class period. The plaintiff did not purchase Goodyear tires.

The plaintiff also alleges that Bayer Corporation had other contacts with the state of Kansas through its Animal Health Division, which develops and markets veterinary pharmaceuticals and insecticides in Shawnee, Kansas, and its Crop Science Division, which conducts research on crop science products in Stillwell, Kansas. These activities are unrelated to plaintiff's claim regarding overpriced rubber-processing chemicals.

The plaintiff also alleges that the defendants consented to jurisdiction in Kansas through registering to do business or by conducting business in Kansas. None of the defendants is incorporated or headquartered in Kansas. Crompton, Uniroyal Chemical Company, Inc., Flexsys America, L.P., and Bayer Corporation are incorporated and headquartered in other states. Uniroyal Chemical Company Limited is a Delaware domesticated corporation incorporated in the Bahamas and does not have a headquarters; Bayer AG and Flexsys NV are incorporated and headquartered in other countries. Based upon plaintiff's allegations, it appears that several, but not all, of the defendants are authorized to do business in Kansas pursuant to K.S.A. 2005 Supp. 17-7301 or have designated registered agents for service pursuant to K.S.A. 2005 Supp. 17-6202.

Arguing that these allegations did not provide a basis for personal jurisdiction, the defendants filed motions to dismiss, alleging: (1) the tires which plaintiff purchased were not manufactured in Kansas and, therefore, there was no basis for specific jurisdiction in Kansas; (2) Kansas does not recognize general jurisdiction; and (3) due process would not allow the exercise of jurisdiction over the defendants. The motions to dismiss were granted after the district court allowed discovery regarding jurisdiction. The district court held that "[t]he nexus between Mr. Merriman's purchase of automobile tires in Pratt, Kansas, that were not manufactured in Kansas allegedly overpriced because of an alleged conspiracy made far from Kansas between foreign corporations not otherwise subject

to Kansas Court jurisdiction is simply too remote to justify jurisdiction over this claim."

The Court of Appeals affirmed, holding that Kansas does not recognize the concept of general jurisdiction and that due process did not allow the exercise of specific jurisdiction under the long arm statute. *Merriman v. Crompton Corporation,* No. 91,702, unpublished opinion filed June 24, 2005.

We granted the plaintiff's petition for review.

## ANALYSIS

Whether jurisdiction exists is a question of law. *Mid-Continent Specialists, Inc. v. Capital Homes,* 279 Kan. 178, 185, 106 P.3d 483 (2005). The plaintiff bears the burden of establishing personal jurisdiction over the defendants. Where, as here, the issue of personal jurisdiction is decided pretrial on the basis of the pleadings, affidavits, and other written materials, any factual disputes must be resolved in the plaintiff's favor and the plaintiff need only make a prima facie showing of jurisdiction. An appellate court reviews a trial court's dismissal for lack of personal jurisdiction under a de novo standard. *Kluin v. American Suzuki Motor Corp.,* 274 Kan. 888, 893, 56 P.3d 829 (2002).

In the context of this class action, only the claims of the named class representative, not absent members of a potential class, are examined to determine jurisdiction. *Barry v. Mortgage Servicing Acquisition Corp.,* 909 F. Supp. 65, 73 (D.R.I. 1995) ("It is the named class representative . . . whose claims must satisfy this test in order for the Court to have personal jurisdiction over [defendant] in this action."). See generally *Calagaz v. Calhoon,* 309 F.2d 248, 253 (5th Cir. 1962) (under class action rule, court must have in personam jurisdiction over named individual representative of class); *Selman v. Harvard Medical Sch.,* 494 F. Supp. 603, 613 n.6 (S.D.N.Y.), *aff'd* 636 F.2d 1204 (2d Cir. 1980) (named class representative must satisfy all jurisdictional prerequisites before class action can go forward). Thus, our inquiry is focused solely upon the jurisdictional allegations related to the plaintiff's purchase of tires which were not manufactured in Kansas and, therefore, do

not directly involve the sale of rubber-processing chemicals in Kansas.

Generally, a two-step analysis is required to determine if a Kansas court has personal jurisdiction. First, the court must determine if Kansas statutes or case law provide a basis for the exercise of jurisdiction over a particular defendant. Second, if statutory and other requirements are satisfied, "the court inquires if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution." *Kluin,* 274 Kan. at 894; see *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413-14, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984) (citing *Pennoyer v. Neff,* 95 U.S. 714, 24 L. Ed. 565 [1878]); 1 Casad & Richman, Jurisdiction in Civil Actions § 3.1, p. 222 (3d ed. 1998).

In *Helicopteros,* 466 U.S. at 414-16, the United States Supreme Court recognized a State could exercise two broad types of personal jurisdiction: specific and general. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state. 466 U.S. at 414. The Kansas long arm statute, K.S.A. 60-308(b), defines when Kansas exercises specific jurisdiction over a nonresident defendant. *Kluin,* 274 Kan. at 896. General jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Helicopteros,* 466 U.S. at 415; see *Kluin,* 274 Kan. at 895.

In this case, plaintiff alleges specific and general jurisdiction as alternative bases for personal jurisdiction over the defendants.

ISSUE 1: *Does Kansas Recognize General Jurisdiction Over Foreign Corporations Doing Business in Kansas?*

The United States Supreme Court has recognized that a State can assert personal jurisdiction over a corporation which is organized under the laws of another State (*i.e,* a "foreign" corporation) even when the cause of action does not arise out of or relate to the foreign corporation's activities in the state. *E.g., Perkins v. Benguet Mining Co.,* 342 U.S. 437, 446-48, 96 L. Ed. 485, 72 S. Ct. 413, *reh. denied* 343 U.S. 917 (1952). Despite the United States Su-

preme Court's recognition of this concept, the Court of Appeals held and the defendants argue that Kansas does not recognize general jurisdiction as a basis for asserting jurisdiction over a corporate defendant. In reaching this holding, the Court of Appeals relied upon this court's decision in *Kluin*. Plaintiff contends that the Court of Appeals misread *Kluin* and erred in reaching this holding.

In *Kluin*, a Kansas resident purchased a motorcycle from an Oklahoma Suzuki dealer and returned to Oklahoma for warranty repairs. When he sued Suzuki in Kansas for breach of express and implied warranties and violation of the Kansas Consumer Protection Act, he argued Kansas had jurisdiction over Suzuki under the Kansas long arm statute, K.S.A. 60-308(b). The district court dismissed the case for lack of personal jurisdiction and improper venue.

On appeal, Kluin argued that Suzuki had transacted business in Kansas by, among other things, entering into contracts with at least five authorized dealerships. Noting that Kluin's injuries did not arise from these contracts, the *Kluin* court observed that these factual allegations, therefore, related to an allegation of general jurisdiction. However, the only basis on which Kluin had asserted jurisdiction was the Kansas long arm statute, K.S.A. 60-308(b), which the court held was limited to cases of specific jurisdiction. 274 Kan. at 896.

The *Kluin* court rejected general jurisdiction under the Kansas long arm statute, ruling that "there must be a nexus between the transaction of business and the alleged claim" in order to support jurisdiction under the long arm statute, K.S.A. 60-308(b). 274 Kan. at 896. Because Kluin's claims did not arise out of Suzuki's alleged contacts with Kansas, there was no such nexus. 274 Kan. at 898-99.

The defendants in this case argue the *Kluin* court rejected general jurisdiction as a basis for a Kansas court to exercise personal jurisdiction over a foreign corporation. In large part, defendants build their argument on two aspects of the decision. First, the court limited the issue to whether "there is jurisdiction under K.S.A. 60-308(b), the Kansas long arm statute." *Kluin*, 274 Kan. at 894. The defendants remove this sentence from its context when they argue

that it was a statement that Kansas does not recognize general jurisdiction. The *Kluin* court was merely phrasing the argument presented by the plaintiff and that argument was limited to application of the Kansas long arm statute. *Kluin*, 274 Kan. at 888, 894, 896. The second aspect of the decision which the defendants cite is the *Kluin* court's reliance on a Court of Appeals' decision in *Three Ten Enterprises, Inc. v. State Farm Fire & Cas. Co.*, 24 Kan. App. 2d 85, 89, 942 P.2d 62, *rev. denied* 262 Kan. 970 (1997), a case which defendants argue rejected general jurisdiction as an available basis for jurisdiction over a foreign corporation. In discussing the *Three Ten* decision, the *Kluin* court stated:

"[T]he Court of Appeals held that the district court erred in applying the doctrine of general jurisdiction. It noted that 'general jurisdiction' is a due process concept which 'does not excuse a plaintiff who invokes the jurisdiction of Kansas state courts from satisfying the statutory test for long arm jurisdiction under [K.S.A.] 60-308(b).' 24 Kan. App. 2d at 89. The *Three Ten* court observed that the legislature could have enacted a statute providing for general jurisdiction, but it has not done so. Therefore, [the long arm statute of] K.S.A. 60-308(b) does not provide for the exercise of general jurisdiction by Kansas courts. 24 Kan. App. 2d at 91." 274 Kan. at 896.

However, immediately after this discussion of *Three Ten*, the *Kluin* court noted: "Three Ten failed to argue jurisdiction under [K.S.A.] 40-218, and the *Three Ten* court did not address service under 40-218." *Kluin*, 274 Kan. at 896. The *Kluin* court then cited *Novak v. Mutual of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 530-33, 28 P.3d 1033, *rev. denied* 272 Kan. 1419 (2001), in which the Court of Appeals held Kansas courts have general jurisdiction over a foreign insurance company required under K.S.A. 40-218 to consent to service of process as part of its application for authority to transact business in Kansas.

By citing K.S.A. 40-218 and *Novak*, the *Kluin* court implicitly recognized that, while the long arm statute is a specific jurisdiction statute, other statutes might give rise to general jurisdiction. Moreover, the *Kluin* court did not explicitly deny the existence of general jurisdiction in Kansas. Hence, we do not read *Kluin* as holding that Kansas does not recognize general jurisdiction. Rather, it appears

that this court has never explicitly rejected or recognized the doctrine of general jurisdiction over foreign corporations.

The plaintiff, using the decision in *Novak* as a springboard, argues we should recognize general jurisdiction as a basis for personal jurisdiction over foreign corporations and can do so under statutes which he argues are similar to the statute at issue in *Novak*, K.S.A. 40-218. K.S.A. 40-218 requires each foreign insurance company applying for authority to transact business in Kansas to file a consent for service of process to be accomplished through the Insurance Commissioner. In *Novak*, the insurer argued that K.S.A. 40-218 provided a mechanism for service but did not provide a basis for jurisdiction. Further, the insurer argued the plaintiffs' cause of action did not arise in Kansas and that jurisdiction must be predicated on the long arm statute, K.S.A. 60-308(b). The trial court agreed and dismissed for lack of personal jurisdiction. On appeal, the Court of Appeals reversed, noting that the long arm statute only covers certain situations, and when it does not apply, "resort must be had to the traditional bases of jurisdiction such as citizenship; domicile and residence; or consent, actual or implied." 29 Kan. App. 2d at 532. *Novak* held that where the insurer was present within Kansas, had been served with process while in Kansas, and had consented to jurisdiction under K.S.A. 40-218, the trial court had personal jurisdiction. 29 Kan. App. 2d at 533.

Although K.S.A. 40-218 does not apply in this case, the plaintiff suggests that a similar analysis applies to K.S.A. 2005 Supp. 17-7301 and K.S.A. 17-7307(c).

### K.S.A. 2005 Supp. 17-7301

K.S.A. 2005 Supp. 17-7301 requires foreign corporations wishing to do business in Kansas to file an application for authority including

"an irrevocable written consent of the foreign corporation that actions may be commenced against it in the proper court of any county where there is proper venue by service of process on the secretary of state as provided for in K.S.A. 60-304, and amendments thereto, and stipulating and agreeing that such service shall be taken and held, in all courts, to be as valid and binding as if due service had been made upon an officer of the corporation."

Many courts have recognized that such consent statutes provide a basis for exercising general jurisdiction. *E.g., Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1393-96 (8th Cir. 1993) (South Dakota); *Bane v. Netlink, Inc.,* 925 F.2d 637, 640 (3d Cir. 1991) (Pennsylvania); *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1200 (8th Cir. 1990) (Minnesota); *Holloway v. Wright & Morrissey, Inc.,* 739 F.2d 695, 698 (1st Cir. 1984) (New Hampshire); *Sternberg v. O'Neil,* 550 A.2d 1105, 1109 (Del. 1988); *Werner v. Wal-Mart Stores, Inc.,* 116 N.M. 229, 231-33, 861 P.2d 270 (Ct. App. 1993); *Sharkey v. Washington Nat. Ins. Co.,* 373 N.W.2d 421, 425-26 (S.D. 1985).

In general, the analysis of these decisions is based upon the general rule that, although parties may not waive subject matter jurisdiction, they may waive personal jurisdiction. *Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 703, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982). Additionally, these cases cite to United States Supreme Court decisions holding that a foreign corporation expressly consents to jurisdiction when it appoints an agent for service of process. See *Neirbo Co. v. Bethlehem Corp.,* 308 U.S. 165, 170-71, 84 L. Ed. 167, 60 S. Ct. 153 (1939); *Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co.,* 243 U.S. 93, 95, 61 L. Ed. 610, 37 S. Ct. 344 (1917); Restatement (Second) of Conflict of Laws § 44 (1969).

As to K.S.A. 2005 Supp. 17-7301, the defendants argue that the statute contains no jurisdictional language and deals only with the required content of a foreign corporation's application to do business in Kansas. The defendants construe K.S.A. 2005 Supp. 17-7301(b)(7) as merely a "consent . . . to accept as valid service the service of process upon the secretary of state for 'actions' that may be commenced against them." Noting that service of process and jurisdiction are distinct legal concepts, the defendants assert that consent to one does not equal consent to the other.

In fact, K.S.A. 2005 Supp. 17-7301(b)(7) requires a foreign corporation applying for authority to do business in Kansas to consent not only to service of process on the Secretary of State, but also to consent *"that actions may be commenced against it* in the proper court of any county where there is proper venue by service of

process on the secretary of state as provided for in K.S.A. 60-304." (Emphasis added.) Different statutory provisions require the designation of a registered agent for the service of process. See K.S.A. 2005 Supp. 17-6202 (requiring designation of registered agent); K.S.A. 2005 Supp. 17-7301(b)(5) (requiring application to do business in Kansas to include name of registered agent).

Read together, these statutory provisions make clear that K.S.A. 2005 Supp. 17-7301(b)(7) requires, as plaintiff suggests, a consent to personal jurisdiction. Thus, a foreign corporation applying for authority to do business in Kansas under K.S.A. 2005 Supp. 17-7301(b)(7) expressly consents to personal jurisdiction and K.S.A. 2005 Supp. 17-7301(b)(7) provides a statutory basis for jurisdiction. The issue remains whether such consent, by itself, satisfies due process. Since not all of the defendants have consented to jurisdiction under K.S.A. 2005 Supp. 17-7301(b)(7), we will discuss alternative grounds for satisfying the first step of the analysis— finding a statutory or case law basis for jurisdiction—before considering whether the exercise of general jurisdiction under the statutes satisfies due process.

### K.S.A. 17-7307(c)

Additionally, the plaintiff argues that Kansas specifically recognized general jurisdiction by adopting K.S.A. 17-7307(c), which provides:

"Any person having a cause of action against any foreign corporation, whether or not such corporation is qualified to do business in this state, which cause of action arose in Kansas out of such corporation doing business in Kansas, or arose while such corporation was doing business in Kansas, may file suit against the corporation in the proper court of a county in which there is proper venue."

Two cases applying this provision support plaintiff's argument. Most recently, a federal district court concluded Kansas has chosen to exercise general jurisdiction over foreign corporations by adopting K.S.A. 17-7307(c). *Scharff v. CRST, Inc.*, 2002 WL 922131 (D. Kan. unpublished opinion filed May 2, 2002). In *Scharff*, the plaintiff was injured in an auto accident in California. He filed suit in Kansas against the defendants, three Iowa corporations which were doing business in Kansas at the time of the accident. The defen-

dants moved to dismiss for lack of personal jurisdiction, arguing that the accident in California was unrelated to any business they conducted in Kansas. However, the plaintiff asserted jurisdiction under K.S.A. 17-7307(c), not the long arm statute. While the defendants had not applied for a certificate of authority to do business in Kansas pursuant to K.S.A. 2005 Supp. 17-7301, the court found they were "doing business" in Kansas such that K.S.A. 17-7307(c) was satisfied. *Scharff*, at *2-3.

The *Scharff* court cited *Novak*, and a case discussed therein, *State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165 (Mo. 1999). In *Holliger*, K-Mart relied on the Missouri long arm statute for its argument that Missouri did not have personal jurisdiction because the claim did not arise out of one of the activities enumerated in the long arm statute. The *Holliger* court rejected the argument that jurisdiction had to be based on the long arm statute, finding that to do otherwise "would severely limit the reach of Missouri law and the protection that law gives Missouri residents and others authorized to use our state's courts." 986 S.W.2d at 168. The court further explained that "long-arm statutes, as the name implies, are intended to expand the reach of the law of the state to authorize jurisdiction over foreign corporations that are not necessarily authorized to do business in the state but whose activities justify personal jurisdiction." 986 S.W.2d at 168. The Missouri Supreme Court concluded "there is no need for a 'long arm' to reach K-Mart outside of Missouri, because K-Mart has a registered agent in Missouri." 986 S.W.2d at 168.

Applying this reasoning, the *Scharff* court concluded K.S.A. 17-7307(c) provided general jurisdiction and it, rather than the Kansas long arm statute, served as the basis for jurisdiction over the defendants. *Scharff*, *4-5.

Similarly, in *Scrivner v. Twin Americas Agricultural & Industrial Developers, Inc.*, 1 Kan. App. 2d 404, 573 P.2d 614, *rev. denied* 222 Kan. 749 (1977), a case not cited by any of the parties, the Kansas Court of Appeals recognized general jurisdiction under K.S.A. 1976 Supp. 17-7301 (virtually same language as K.S.A. 2005 Supp. 17-7301) and K.S.A. 17-7307(c). In that case, Kansas shareholders filed suit against a Panamanian corporation seeking pri-

marily a supervised election of directors and to enjoin a proposed stock issue. The district court dismissed the suit for lack of personal jurisdiction over the defendant, and the Court of Appeals affirmed.

In analyzing whether there was a basis for personal jurisdiction, the *Scrivner* court noted that the plaintiffs had disclaimed any reliance on the long arm statute, K.S.A. 60-308, and were not arguing that their cause of action arose out of the transaction of any business by the defendant in Kansas. 1 Kan. App. 2d at 408. This left the plaintiffs with two possible avenues for establishing jurisdiction: K.S.A. 1976 Supp. 17-7301 or K.S.A. 17-7307(c). Because the defendant had never applied for a certificate of authority to do business in Kansas, K.S.A. 1976 Supp. 17-7301 did not apply. The court then considered K.S.A. 17-7307(c), noting that under that statute "the cause of action must have arisen either 'out of such corporation doing business in Kansas,' or 'while such corporation was doing business in Kansas.' " 1 Kan. App. 2d at 408. The first clause did not apply because the cause of action did not arise out of any business done by the defendant in Kansas; however, the second clause might apply if the defendant was doing business in Kansas when the cause of action arose. As stated in the syllabus, the court held:

"A foreign corporation may be sued in this state on a cause of action arising elsewhere if, at the time the cause of action arose, it was doing business in this state so as to be required to register and qualify."

"A foreign corporation may be sued here on any cause of action arising 'while' it was doing business here, even if it was not qualified." 1 Kan. App. 2d 404, Syl. ¶¶ 2, 3.

In other words, the *Scrivner* court held general jurisdiction exists under K.S.A. 17-7307(c) where a foreign corporation is doing business in Kansas. Thus, the remaining question for the court to resolve was whether the plaintiffs' cause of action arose while the defendant was doing business in Kansas; the court concluded it was. 1 Kan. App. 2d at 415. (The statute applied by the court was subsequently amended. See L. 2004, ch. 143, sec. 80. Now, rather than defining "doing business," the statute lists "[a]ctivities of a foreign corporation which do not constitute doing business within

the meaning of K.S.A. 17-7301" and provides that it "does not apply in determining the contacts or activities that may subject a foreign corporation to service of process . . . ." K.S.A. 2005 Supp. 17-7303[a] and [c].).

Beyond these cases, there are other authorities which support the plaintiff's argument. Notably, Judge Gard and Professor Casad, cited with approval in *Kluin*, 274 Kan. at 896, agree with plaintiff's position:

"It is important to note that the long-arm statute, K.S.A. 60-308, deals with service of process *outside* of Kansas. Section 308(d) expressly states that 'nothing contained in this section limits or affects the right to serve any process in any other manner provided by law.' Thus, foreign insurers can be served under K.S.A. 40-218, which authorizes 'general jurisdiction.' See *Novak v. Mutual of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 28 P.3d 1033 (2001). Other foreign corporations that are 'doing business' in Kansas can be served under K.S.A. 17-7301 (which requires consent to general jurisdiction) if the corporation is qualified to do business in Kansas, or under K.S.A. 17-7307(c), which authorizes general jurisdiction over a non-qualifying corporation for causes of action that arose while the corporation was 'doing business' in Kansas, even though the cause of action arose elsewhere. See *Scharff v. CRST Inc.*, 2002 WL 922131 (D. Kan. 2002)." 4 Gard & Casad, Kansas Law and Practice, Kan. C. Civ. Proc. Annot. § 60-308, p. 423-24 (4th ed. 2003).

Professor Casad reiterated this view as part of the Kansas Judicial Council's testimony to a legislative committee considering 2006 House Bill (HB) 2610, legislation which makes our decision on this issue one of first and last impression. 2006 HB 2610 amended the long arm statute, effective upon its publication in the statute books, by among other things, adding the following emphasized language: "Nothing contained in this section limits or affects the right to serve any process in other manner provided by law, *including, but not limited to, K.S.A. 17-7301, 17-7307, 40-218 and 50-631, and amendments thereto*." The Judicial Council testimony, which was supported by a memorandum authored by Professor Casad, stated that Kansas had recognized general jurisdiction long before the Kansas long arm statute was enacted and the long arm statute "was intended to *extend* the reach of Kansas courts, not to limit it." Judicial Council testimony on 2006 HB 2610, February 28, 2006; Minutes, Sen. Judiciary Comm. March 1, 2006 (attach. 2). Addi-

tionally, the testimony stated: "General jurisdiction over foreign corporations is clearly allowed pursuant to K.S.A. 17-7301." However, the testimony noted that confusion has developed over whether Kansas recognizes general jurisdiction and the amendments would "clarify the law as it has long existed in this state."

Contrary to this view, the defendants offer a severely strained interpretation of K.S.A. 17-7307(c), focusing upon the portion of the statute which states that, regardless of whether a foreign corporation has qualified to do business in Kansas, it may be sued for a cause of action which "arose in Kansas out of such corporation doing business in Kansas, or arose while such corporation was doing business in Kansas." The defendants argue the first clause authorizes suits for causes of action arising out of a foreign corporation *currently* doing business in Kansas while the second clause authorizes suits for causes of action arising out of a foreign corporation *formerly but no longer* doing business in Kansas. The defendants' interpretation of the statute is contrary to the plain language of the statute which clearly authorizes general jurisdiction as argued by plaintiff.

Furthermore, a different statute, K.S.A. 2005 Supp. 17-7306, sets out the procedure when claims are filed against a foreign corporation formerly but no longer doing business in Kansas. K.S.A. 2005 Supp. 17-7306 provides that a foreign corporation authorized to do business in Kansas may surrender its authority and withdraw from the state by filing certain documents with the Secretary of State. Upon such filing,

"the appointment of the resident agent of the corporation in this state shall be revoked, and the corporation shall be deemed to have consented that service of process in any action, suit or proceeding based upon any cause of action arising in this state, during the time the corporation was authorized to transact business in this state, may thereafter be made by service upon the secretary of state in the manner prescribed by K.S.A. 60-304, and amendments thereto." K.S.A. 2005 Supp. 17-7306(c).

This statutory provision reinforces plaintiff's argument that K.S.A. 17-7307(c) authorizes general jurisdiction over foreign corporations still doing business in Kansas.

We hold that K.S.A.17-7307(c) provides a basis for general jurisdiction over foreign corporations.

ISSUE 2:   *Does the Exercise of Jurisdiction Over the Defendants Pursuant to K.S.A. 2005 Supp. 17-7301(b)(7) and K.S.A. 17-7307(c) Comport With Due Process?*

Having determined that K.S.A. 2005 Supp. 17-7301(b)(7) and K.S.A. 17-7307(c) can provide the statutory basis for the exercise of general jurisdiction, we must determine whether the exercise of jurisdiction would offend due process.

### *Due Process Under K.S.A. 2005 Supp. 17-7301*

The principle issue in most cases addressing consent statutes such as K.S.A. 2005 Supp. 17-7301 is not whether the statute provides a basis for jurisdiction but whether the exercise of jurisdiction under the provision comports with due process.

Consent jurisdiction over corporations was recognized by the United States Supreme Court in the 1917 decision of *Pennsylvania Fire Ins. Co.*, 243 U.S. at 95. The Court held that the Missouri requirement of consent to service of process did not deprive a foreign insurance company of due process even though the consent was its only apparent contact with Missouri.

*Pennsylvania Fire* has not been expressly overruled and subsequently many courts have determined that a corporation's consent to jurisdiction satisfies due process. *E.g., Bane,* 925 F.2d at 640; *Knowlton,* 900 F.2d at 1199-1200; *Holloway,* 739 F.2d at 696-97; *Sternberg,* 550 A.2d at 1109, 1111. *Novak* is consistent with this line of cases. With little discussion and without engaging in any analysis of minimum contacts, the *Novak* court held that an insurer's presence in the state and consent to jurisdiction under K.S.A. 40-218 established personal jurisdiction. 29 Kan. App. 2d at 532-33.

Summarizing the issue and the case law, one commentator has stated:

"[T]he modern rule is that a foreign corporation which, as a condition of doing business in the state, appoints an agent upon whom service of process may be made, has thereby given effective consent to be sued not only in the state court of that state, but in the federal courts as well. A foreign corporation's qualification

to do business within a state, and its formal registration there, are sometimes viewed as 'consenting' to be treated as a domestic corporation, thus permitting it to be sued there on causes of action over which the state's courts would otherwise decline to exercise jurisdiction. If a foreign corporation has not expressly consented to a state's jurisdiction by registration, 'minimum contacts' with that state may provide a due process basis for the state's jurisdiction. However, if a foreign corporation has expressly consented to the jurisdiction of a state by registration, due process is satisfied and an examination of 'minimum contacts' is unnecessary. Due process is satisfied by express consent, since express consent constitutes a waiver of all other personal jurisdiction requirements." 18 Fletcher, Cyclopedia of the Law of Private Corporations § 8641, pp. 123-24 (rev. ed. 1999).

However, some courts have rejected consent as a sole ground for finding that the exercise of jurisdiction comports with due process, concluding the due process holding in *Pennsylvania Fire* was implicitly overruled by *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945). In *International Shoe,* the Court considered whether Washington courts could subject a Missouri-based Delaware corporation to a suit to collect a tax based upon the presence of several salesman in the state. The case departed from the traditional foundation of jurisdiction, physical presence, and adopted a minimum contacts test, stating:

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of court was prerequisite to its rendition of a judgment personally binding him. [Citation omitted.] But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations omitted.]." 326 U.S. at 316.

Based upon this holding, some courts have concluded that this test is not satisfied by consent alone; other "minimum contacts" are required. See, *e.g., Consolidated Development Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292-93 (11th Cir. 2000); *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir. 1992); *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir. 1971). Some commentators have also criticized the consent theory of jurisdiction based on corporate registration. See, *e.g.,* Note, *Gen-*

*eral Jurisdiction Over Foreign Corporations: All that Glitters is not Gold Issue Mining,* 14 Rev. Litig. 741 (1995); Kipp, *Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General Jurisdiction,* 9 Rev. Litig. 1 (1990).

In the Tenth Circuit Court of Appeals, the issue has not been clearly resolved. *Schreiber v. Allis-Chalmers Corp.,* 611 F.2d 790, 793-94 (10th Cir. 1979), following transfer from a Mississippi district court, considered whether Mississippi could exercise jurisdiction in a suit brought for injuries which occurred in Kansas and which were caused by a product manufactured by a Delaware corporation, headquartered in Wisconsin, and qualified to do business in Mississippi. The Tenth Circuit Court of Appeals considered both the continuous and systematic activities of the corporation and the fact it was registered to do business in Mississippi in holding that Mississippi could sustain jurisdiction. The federal district courts in Kansas have been inconsistent. In *Slawson v. Dome Petroleum Corp.,* 561 F. Supp. 67, 73 (D. Kan. 1983), the court concluded the defendant corporation's appointment of a resident agent coupled with proper service on that agent were sufficient to subject it to personal jurisdiction. Assuming, but not deciding, that the defendant must also have sufficient minimum contacts to validate jurisdiction, the court found such minimum contacts existed. In two unpublished opinions of Kansas federal district courts, each followed a different approach: see *2000 International Ltd. v. Chambers,* 2000 WL 1801835 (D. Kan. unpublished opinion filed November 6, 2000) (citing *Consolidated Development, Wenche, Siemer,* and *Ratliff* for premise that "registration to do business in a state is of little consequence in general personal jurisdiction analysis"); *Executive Aircraft Consulting, Inc., v. Tower Financial Corp.,* 1992 WL 402032 (D. Kan. unpublished opinion filed December 1, 1992) (citing *Knowlton* and *Slawson* for premise that registration to do business as a foreign corporation in Kansas constitutes a consent to personal jurisdiction on any cause of action and no further due process analysis is necessary).

Thus, we have the benefit of well-reasoned authority on both sides of this issue. The Delaware Supreme Court's decision in *Sternberg v. O'Neil,* 550 A.2d 1105 (Del. 1988), is one of the more

thorough discussions of the view that *International Shoe* does not alter *Pennsylvania Fire*. Rather, "[i]t would appear that the due process holdings of *Pennsylvania Fire Ins. Co.* (express consent by registration) and *International Shoe* (implied consent by minimum contacts) complement one another and are neither inconsistent nor mutually exclusive." *Sternberg*, 550 A.2d at 1110. As the Delaware court noted, many of the cases adopting the opposing view rely upon the reference in *International Shoe* to the "legal fiction that [a corporation] has given consent to service and suit" and ignore the clarification that this reference applies to "consent being *implied* from [the corporation's] presence in the state through the acts of its authorized agent." (Emphasis added.) *International Shoe*, 326 U.S. at 318. Thus, the Court in *International Shoe* was not referring to the *express* consent obtained through qualifying to do business.

Additionally, the Delaware court noted that many courts which require more than consent have cited the United States Supreme Court's decision in *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 96 L. Ed. 2d 485, 72 S. Ct. 413, *reh. denied* 343 U.S. 917 (1952); the Delaware court rejected the view that *Perkins* requires more than consent. *Sternberg*, 550 A.2d at 1111. The courts citing *Perkins* as a basis for concluding consent alone does not satisfy due process rely on the following sentence in *Perkins*: "The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test." 342 U.S. at 445. See, *e.g., Freeman v. Dist. Ct.*, 116 Nev. 550, 1 P.3d 963 (2000). However, as the Delaware court correctly noted in *Sternberg*, the context of the quoted language from *Perkins* is the Court's minimum contacts analysis utilized for implied consent rather than its consideration of whether there was jurisdiction conferred by express consent. The implied consent analysis was necessary because the corporation was not qualified to do business in the state and had not appointed an agent. At another point in the decision, the Court reaffirmed the concept of express consent as a basis for jurisdiction, stating:

"Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service and receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative." *Perkins*, 342 U.S. at 444.

The Delaware court also noted the concept of express consent was recognized in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant *who has not consented to suit* there," due process is satisfied if the defendant has minimum contacts with the forum), and *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888, 893, 100 L. Ed. 2d 896, 108 S. Ct. 2218 (1988) (appointment of an agent for service of process would operate as a consent to general jurisdiction in any cause of action, "including those in which it did not have minimum contacts necessary for supporting personal jurisdiction," without offending the requirements of due process). *Sternberg*, 550 A.2d at 1112; see also *Burnham v. Superior Court of Cal., Marin County*, 495 U.S. 604, 616, 109 L. Ed. 2d 631, 110 S. Ct. 2105 (1990) (rejecting argument that there must be continuous and systematic contacts even where an individual defendant was served with process in the state; finding the argument "rests on a thorough misunderstanding" of cases).

The Delaware court's analysis in *Sternberg* is persuasive and effectively refutes the arguments of courts adopting the opposing view. Moreover, much of the opposing analysis is based upon the argument that the consent is not an express agreement because the statutes often relate to service, not jurisdiction. One commentator argues that if states want their corporate registration statutes to establish general jurisdiction over foreign corporations, they should include an express consent provision in the statute, rather than simply inferring consent from the corporation's appointment of a resident agent. Kipp, 9 Rev. Litig. at 43-44. As an example of a state statute which successfully establishes general jurisdiction, Kipp cites Arkansas' statute, which provides:

" 'Before authority is granted to any foreign corporation to do business in the State, it must file with the Secretary of State a resolution adopted by its board of directors, consenting that service of process upon the registered agent of the company in this state, or upon the Secretary of State of this state, in any action brought or pending in this state, shall be a valid service upon said company.' " Kipp, 9 Rev. Litig. at 44 (quoting Ark. Stat. Ann. § 64-1223 [1980]).

The Kansas statute is virtually identical and contains an equally clear provision requiring a foreign corporation to file "an irrevocable written consent . . . that actions may be commenced against it . . . by service of process on the secretary of state . . . and stipulating and agreeing that such service shall be taken and held, in all courts, to be as valid and binding as if due service had been made upon an officer of the corporation." K.S.A. 2005 Supp. 17-7301(b)(7). In other words, Kansas does not merely *infer* consent to jurisdiction from a foreign corporation's registration to do business and appointment of a resident agent; Kansas requires *express* written consent to jurisdiction.

We hold that the Due Process Clause is not violated when jurisdiction over a foreign corporation is based upon the corporation's express written consent to jurisdiction under K.S.A. 2005 Supp. 17-7301(b)(7).

In this case, the plaintiff alleges that some defendants have expressly consented and others have consented through the actions of an affiliated company. This later theory seems to suggest an alter ego theory. See *Farha v. Signal Companies, Inc.*, 216 Kan. 471, 479-81, 532 P.2d 1330 (1975) (jurisdiction over a parent corporation will give the state jurisdiction over a subsidiary corporation, and vice versa, "if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence").

The record is not entirely clear which corporations have agents and which corporations are merely alleged to have an agent because an affiliated corporation has a registered agent. However, the plaintiff alleges that Crompton Corporation, both of its Uniroyal subsidiaries, and Bayer Corporation were authorized to do business in Kansas pursuant to K.S.A. 2005 Supp. 17-7301 and had designated an agent for service of process. These defendants have

not raised the alter ego theory as an issue on appeal. We, therefore, will not address the merits or application of the theory in the context of consent jurisdiction. Rather, we accept for purposes of considering a motion to dismiss that the plaintiff has made a prima facie case that K.S.A. 2005 Supp. 17-7301 applies to these defendants based upon each corporation's express consent to jurisdiction.

The plaintiff suggests that the two Flexsys corporations were "arguably" authorized to do business in Kansas as well. The argument is based upon the allegation that the corporations are owned in part by Solutia, Inc., a corporation which had designated an agent for service of process in Kansas. Plaintiff seems to suggest that service on Solutia's resident agent would also give the court jurisdiction over the two Flexsys corporations based on the alter ego theory. However, the plaintiff has not named Solutia as a party, so service on Solutia would not equate to jurisdiction over Solutia; therefore, plaintiff cannot reach Flexsys through Solutia in this manner. Thus, we must examine whether there are other bases for jurisdiction over the Flexsys corporations and any other defendant which has not consented to jurisdiction.

### General Jurisdiction Under K.S.A. 17-7307(c)

When general jurisdiction is asserted and a corporate defendant has not consented to jurisdiction, due process requires "continuous and systematic general business contacts" to sustain a forum's exercise of jurisdiction. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984); see *Benton v. Cameco Corp.,* 375 F.3d 1070, 1080 (10th Cir. 2004) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 [10th Cir. 1998]) (rejecting general jurisdiction where the defendant had two dozen "spot market" transactions over 8-year period and where defendant's wholly owned subsidiary was licensed to do business in state).

This test of "continuous and systematic general business contacts" applies when general jurisdiction is asserted under K.S.A. 17-7307(c). See 4 Gard & Casad, Kansas Law and Practice, Kan. C. Civ. Proc. Annot. § 60-308, p. 424 (4th ed. 2003) ("doing busi-

ness" under K.S.A. 17-7307[c] "requires ongoing, systematic activity" and "even if the statute purports to authorize jurisdiction, the constitutional due process requirements for general jurisdiction must be satisfied."). Consistent with this principle, the federal district court applying K.S.A. 17-7307(c) in *Scharff v. CRST, Inc.,* 2002 WL 922131 (D. Kan., unpublished opinion filed May 2, 2002), considered whether the exercise of personal jurisdiction comported with due process requirements, including whether the defendants had "contacts with the forum state [that were] so pervasive that personal jurisdiction is conferred by the 'continuous and systematic' nature of the defendant's in-state activities" and whether "the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice." *Scharff,* at *5-7.

Two United States Supreme Court opinions have addressed what constitutes continuous and systematic contacts. In *Perkins,* 342 U.S. at 447-48, the Supreme Court held that a Philippine corporation had continuous and systematic contacts with Ohio where the corporation operated part of its general business out of Ohio and its president kept his wartime office in Ohio, kept company files there, held directors' meetings there, carried on corporate correspondence from his Ohio office, deposited corporate funds in two Ohio bank accounts, engaged an Ohio bank to act as the corporation's transfer agent, and supervised the rehabilitation of the corporation's Philippine properties from Ohio.

Reaching the opposite holding in *Helicopteros,* 466 U.S. 408, the Supreme Court found the defendant's contacts with Texas were insufficient to support general personal jurisdiction where the defendant had ventured to Texas to negotiate a contract, had purchased helicopters and related equipment from Texas vendors at regular intervals, and had sent prospective pilots and other personnel to Texas for training.

Application of these two cases to different facts is less than clear. While the Supreme Court has refrained from stating factors to be applied in determining if contacts are continuous and systematic, other courts have attempted to do so. Often it is stated:

"In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state. In assessing contacts with a

forum, courts consider (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure at § 1069, at 348-55 (2d ed. 1987)." *Systems Material Handling Company v. Greenstein,* 84 F. Supp. 2d 1203, 1209 (D. Kan. 2000).

Applying these factors to Bayer Corporation, we conclude it had continuous and systematic contacts with Kansas by virtue of its Animal Health Division operating in Shawnee, Kansas, and its Crop Science Division operating in Stillwell, Kansas.

However, the other defendants' contacts with Kansas in this case fall short of being the type of continuous and systematic contacts required to satisfy traditional notions of fair play and substantial justice. The plaintiff did not allege that any of the other defendants had a local office or agents in Kansas; sent agents to Kansas on a regular basis to solicit business from Goodyear or others; or held themselves out as doing business in Kansas through advertisements, listings, or bank accounts. While the volume of business the defendants conducted with Goodyear was financially substantial, all of the defendants' sales were to a single Kansas customer. See *D.J.'s Rock Creek Marina, Inc. v. Imperial Foam and Insulation Mfg. Co.,* 2003 WL 262495 (D. Kan., unpublished opinion filed January 29, 2003) (finding no authority that contact with a forum consisting of a single customer constituted systematic and continuous contacts necessary to confer general jurisdiction; much more than single contact in the forum required, citing *Morrison v. WCCO Belting, Inc.,* 35 F. Supp. 2d 1293 [D. Kan. 1999], which held a defendant lacked continuous and systematic contacts despite continuous sales in Kansas, making sales calls to Kansas customers, directly shipping products into Kansas, and having a Kansas-based sales representative).

Thus, under the facts of this case, due process does not allow the exercise of general jurisdiction under K.S.A. 17-7307(c) as to any defendant except Bayer Corporation. Thus, we must consider the plaintiff's other arguments as to why jurisdiction can be asserted over Flexsys.

ISSUE 3: *Does the Kansas Long Arm Statute, K.S.A. 60-308(b),*
*Provide a Basis for Specific Jurisdiction Over the De-*
*fendants?*

Alternatively, the plaintiff argues the Kansas long arm statute,
K.S.A. 60-308(b), provides a statutory basis for asserting jurisdic-
tion over the defendants under the theory that the price-fixing
damages arose from actions by the defendants in Kansas. In Kan-
sas, the long arm statute is construed liberally to assert jurisdiction
over nonresident defendants to the full extent allowed by the Due
Process Clause. *Kluin v. American Suzuki Motor Corp.*, 274 Kan.
888, 893, 56 P.3d 829 (2002).

The long arm statute provides, in pertinent part:

"(b) Any person, whether or not a citizen or resident of this state, who in person
or through an agent or instrumentality does any of the acts hereinafter enumer-
ated, thereby submits the person and, if an individual, the individual's personal
representative, to the jurisdiction of the courts of this state as to any cause of
action *arising from the doing of any of these acts:*
    (1) Transaction of any business within this state;
    (2) commission of a tortious act within this state;
    . . . .
    (7) causing to persons or property within this state any injury arising out of an
act or omission outside of this state by the defendant if, at the time of the injury
either (A) the defendant was engaged in solicitation or service activities within
this state; or (B) products, materials or things processed, serviced or manufactured
by the defendant anywhere were used or consumed within this state in the ordi-
nary course of trade or use." (Emphasis added.) K.S.A. 2005 Supp. 60-308(b).

The Court of Appeals concluded the plaintiff failed to establish
specific jurisdiction under K.S.A. 60-308(b)(1) (transaction of busi-
ness within the state) and (b)(7) (local injury from transaction out-
side the state). However, the Court of Appeals assumed that K.S.A.
60-308(b)(2) (tortious act within the state) would apply because
antitrust violations are generally recognized to be torts. *Merriman*,
slip op. at 7-8. Applying this provision, the plaintiff suggested to
the Court of Appeals that specific jurisdiction could be acquired
over the defendant who sold the chemicals which were used to
manufacture the tires plaintiff purchased in Kansas at an inflated
price. See *Ling v. Jan's Liquors*, 237 Kan. 629, 632-33, 703 P.2d
731 (1985) (K.S.A. 60-308[b][2] supports the exercise of personal

jurisdiction where act occurs outside of the state but injury occurs in state; the " 'tortious act' is deemed to have occurred in the state where the injury occurs." 237 Kan. at 633). Once specific jurisdiction was acquired over one defendant, the plaintiff argued that, under a conspiracy theory of jurisdiction, jurisdiction exists over all of the defendants because each coconspirator is "an agent or instrumentality" of the other pursuant to K.S.A. 60-308(b) and the action of one coconspirator is considered to be the act of all. See *Professional Investors Life Ins. Co. v. Roussel*, 445 F. Supp. 687 (D. Kan. 1978).

The Court of Appeals accepted that the statutory basis for jurisdiction *might* be satisfied under this theory. But, the court ruled that the constitutional due process test was not met where the defendants merely placed a product into the stream of commerce and did not purposefully direct their products to serve the market in Kansas, citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). *Merriman*, slip op. at 8.

The first step of analysis is to determine if the Court of Appeals was correct in its analysis and application of the various provisions of the long arm statute. Because the Court of Appeals determined that K.S.A. 60-308(b)(2) was the only possible basis for jurisdiction, we will begin our analysis with that provision.

### K.S.A. 60-308(b)(2)—Tortious Act Within the State

The Court of Appeals assumed that K.S.A. 60-308(b)(2) would apply because antitrust violations are generally recognized to be torts. *Merriman*, slip op. at 7.

The defendants argue that K.S.A. 60-308(b)(2) cannot provide the basis for specific jurisdiction for two reasons: (1) because the alleged tortious act did not occur in Kansas and (2) because price fixing is not a tortious act.

The defendants recognize this court has held that when an injury occurs in this state as a result of a negligent act outside the state, the tortious act provision of the long arm statute will support the exercise of personal jurisdiction. See *Ling*, 237 Kan. at 632-33. The *Ling* court reasoned: "[T]he 'tortious act' is not complete until the

injury has occurred. In other words, the 'tortious act' is deemed to have occurred in the state where the injury occurs." 237 Kan. at 633.

Contrary to the holding of *Ling*, the defendants contend that, under the facts of this case, any tortious act was necessarily completed, not when plaintiff sustained economic injury, but when the defendants sold price-fixed chemicals to the manufacturer (outside Kansas) which made the plaintiff's tires. The defendants contend that a contrary conclusion would mean that any tort which has economic ramifications in Kansas is subject to the jurisdiction of the Kansas courts.

The defendants argue that *Ling's* holding should be limited to situations where *physical* injury occurs in this state as the result of a tortious act occurring outside the state. The defendants point out that the tortious act provision of the Kansas long arm statute was based upon the tortious act provision of the Illinois long arm statute (see *Woodring v. Hall*, 200 Kan. 597, 600, 438 P.2d 135 [1968]) and that the Illinois Supreme Court has refused to extend long arm jurisdiction based on a tortious act outside the state which causes only economic injury within the state. See *R.W. Sawant & Co. v. Allied Programs*, 111 Ill. 2d 304, 312, 489 N.E.2d 1360 (1986); *Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431, 437-39, 427 N.E.2d 1203 (1981).

However, several cases applying Kansas law have not made any distinction between physical and economic injury. See *Dazey Corp. v. Wolfman*, 948 F. Supp. 969, 973 (D. Kan. 1996) (exercise of personal jurisdiction under K.S.A. 60-308[b][2] proper where plaintiff's financial loss, allegedly caused by defendant's fraudulent conduct, occurred in Kansas); *National Gypsum Co. v. Dalemark Industries, Inc.*, 779 F. Supp. 147 (D. Kan. 1991); *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach LLP*, 33 Kan. App. 2d 593, 598, 106 P.3d 74, *rev. denied* 280 Kan. 983 (2005). There is no persuasive reason not to adopt the view of these cases. The legislature did not make application of K.S.A. 60-308(b) dependent upon the nature of the injury. Jurisdiction can be obtained under K.S.A. 60-308(b)(2) if either physical or economic injury occurs in the state as a result of a negligent act outside the state.

The defendants also argue that price fixing is not a tortious act because, at common law, while some antitrust violations were recognized as torts, other antitrust violations such as price fixing were not. In support, the defendants cite a law review Note, *Contribution in Private Antitrust Suits*, 63 Cornell L. Rev. 682, 692-97 (1978), which opines that whether a particular antitrust suit sounds in tort depends on the nature of the violation and argues that price-fixing actions more closely resemble quasi-contract than tort. The defendants also cite several cases which have refused to recognize price-fixing as a tort. See, *e.g., Free v. Abbott Laboratories, Inc.*, 164 F.3d 270, 273-74 (5th Cir. 1999) (declining to recognize tort cause of action for price fixing in violation of Louisiana antitrust laws where neither Louisiana Supreme Court nor legislature had done so); *Four B Corp. v. Ueno Fine Chemicals Industry, Ltd.*, 241 F. Supp. 2d 1258, 1262 (D. Kan. 2003) (in price-fixing case, finding plaintiffs had "provided no legal support for their contention that a violation of Kansas antitrust laws constitutes tortious behavior"); *Indiana Grocery Co. v. Super Valu Stores, Inc.*, 684 F. Supp. 561, 584 (S.D. Ind. 1988) ("no Indiana precedent establishes price fixing or predatory pricing as a tort"); see also *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 497, 84 L. Ed. 1311, 60 S. Ct. 982 (1940) (prior to Sherman Act, agreements to fix prices "gave rise to no actionable wrong").

According to the defendants, the cases cited by the plaintiff stand only for the premise that antitrust actions *in general* are tort actions, or that certain kinds of antitrust violations or other wrongs, other than price fixing, constitute torts. See, *e.g., Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) ("antitrust violations do encompass some business torts" including negotiation and execution of contracts that violated antitrust laws); *Bangor Punta Operations v. Universal Marine Co.*, 543 F.2d 1107, 1109 (5th Cir. 1976) (violation of Lanham Act—trademark infringement—constitutes federal tort of unfair competition); *Albert Levine Associates v. Bertoni & Cotti*, 314 F. Supp. 169, 171 (S.D.N.Y. 1970) (violation of Clayton Act—group boycott—is a tort); *McDonald v. Amtel, Inc.*, 633 P.2d 743 (Okla. 1981) (cause

of action under state antitrust statute is tortious rather than contractual in nature).

However, the Illinois courts have held that the term "tortious act" as used in their long arm statute "is not limited to those acts which constituted torts at common law. Rather, it encompasses any act that constitutes a breach of duty to another imposed by law." *Florendo v. Pan Hemisphere Transport, Inc.*, 419 F. Supp. 16, 17 (N.D. Ill. 1976). Furthermore, there are a few cases, not cited by either party, which have held that price-fixing actions involve the infliction of tortious injury and that injury occurs at the place of sale because the consumer is injured when he or she pays the artificially inflated price. See *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618, 675 n.29 (E.D. Mich. 2000) (plaintiffs alleged conspiracy to restrain trade, reduce competition and fix prices; court accepted argument that "antitrust injuries, by their nature, involve infliction of tortious injury, . . . and that . . . 'the place of injury from a price-fixing conspiracy is the place of sale, since the consumer is injured at the time he pays the artificially inflated price' "); *In re Mid-Atlantic Toyota Antitrust Litigation*, 525 F. Supp. 1265, 1274 (D. Md. 1981).

Another such case, *Hitt v. Nissan Motor Company, Ltd.*, 399 F. Supp. 838, 847-48 (S.D. Fla. 1975), explained the policy reasons in favor of applying the tortious act provisions of state long arm statutes to a price-fixing conspiracy:

"[L]ike a defective product, the injury within the forums which could result from a price fixing conspiracy by a manufacturer, its distributor and franchised dealers, is certainly foreseeable even though such injury is only of a pecuniary nature. It is a distinction without merit that a products liability injury arises out of the use of the product because injury as a result of a price fixing conspiracy is incident to the transaction of sale itself. The buyer who pays higher prices due to such a conspiracy is injured at the time such sale is consummated. The analogy is obvious. From a policy point of view an even greater reason can be envisioned for reaching a manufacturer in a case such as the present one—every buyer of such a 'tainted' product is injured and thus the injury is widespread whereas injuries due to defective products are generally relatively rare in proportion to the total number of a given product sold."

This reasoning is persuasive.

We hold that a price-fixing conspiracy may be a tortious act under K.S.A. 60-308(b)(2).

Additionally, we must consider the plaintiff's contention that, under a conspiracy theory of jurisdiction, if personal jurisdiction exists over one defendant pursuant to K.S.A. 60-308(b)(2), jurisdiction exists over all of the defendants.

K.S.A. 60-308(b) provides jurisdiction over any person "who in person or through an agent or instrumentality does any" act falling under the provisions of the long arm statute. Thus, if one conspirator commits acts in Kansas in furtherance of the conspiracy and that conspirator falls under the act, jurisdiction can be obtained as to all conspirators. See *Professional Investors Life Ins. Co.*, 445 F. Supp. 687. This method of acquiring personal jurisdiction pursuant to long arm statutes has been adopted by a majority of courts. Courts have used the civil conspiracy theory to assert jurisdiction "over [those] whom jurisdiction would otherwise be lacking." *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 411 (E.D. Pa. 1981). See generally Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983).

Because we conclude that the provisions of K.S.A. 60-308(b)(2) may apply as alleged by the plaintiff, we need not consider the other provisions of 60-308 under which the plaintiff asserts jurisdiction.

ISSUE 4: *Does the Exercise of Jurisdiction Over the Defendants Pursuant to K.S.A. 60-308(b)(2) Comport With Due Process?*

Having determined that K.S.A. 60-308(b)(2) may apply, the next consideration is whether application of the provision in this case would comport with due process.

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945), established the analytical scheme which gave rise to long arm statutes such as K.S.A. 60-308(b), stating due process was not offended when jurisdiction is exercised over a defendant that, although not present within the territory of the forum, has "certain minimum contacts" with the forum. In

considering whether the corporation's minimum contacts meet this standard, courts should consider "the quality and nature" of the defendant's activity in determining whether it is reasonable and fair to require defense in that state (326 U.S. at 317, 319), rendering jurisdiction consistent with " 'traditional notions of fair play and substantial justice. [Citation omitted.].' " 326 U.S. at 316; see *In re Marriage of Brown*, 247 Kan. 152, 161, 795 P.2d 375 (1990).

Due process requires "a demonstration that the nonresident defendant *purposely established* minimum contacts with the forum state, thereby invoking the benefits and protections of its laws." (Emphasis added.) *In re Hesston Corp.*, 254 Kan. 941, Syl. ¶ 3, 870 P.2d 17 (1994); see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). "The requirement of purposeful availment ensures that an out-of-state defendant will not be haled into a jurisdiction as a result of the unilateral acts of another party." *Loeffelbein*, 33 Kan. App. 2d at 600.

In this case, the plaintiff's claim arose from the sale of tires which were manufactured in another state. Therefore, the defendants' sales of rubber-processing chemicals to Goodyear in Kansas are not the basis for the claim. Nor are Bayer's agricultural activities.

Rather, the plaintiff argues that the defendants purposefully established contacts with Kansas by selling price-fixed chemicals to national tire manufacturers known to sell tires in Kansas. In other words, according to the plaintiff, the defendants placed their products into the stream of commerce with the expectation that the chemicals would be utilized in products which would be purchased by consumers in Kansas.

The United States Supreme Court recognized the stream of commerce theory as being sufficient to establish minimum contacts in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). In *World-Wide Volkswagen*, the plaintiffs were involved in a car accident in Oklahoma and brought a products liability action in Oklahoma against the New York wholesaler and dealer who sold them their car. The plaintiffs argued that the defendants had placed the car into the stream of commerce, that it was foreseeable that the car would be driven in Oklahoma, and that the assertion of personal jurisdiction

in that state was therefore proper. The Court rejected that argument. It held that amenability to suit does not blindly "travel with the chattel" through the stream of commerce, but is limited by foreseeability. 444 U.S. at 296.

"[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he [or she] should reasonably anticipate being haled into court there." 444 U.S. at 297.

A corporation can reasonably anticipate being haled into court in a state if it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," 444 U.S. at 298, and "if the sale of [its] product . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States." 444 U.S. at 297.

Four years later, the Court again considered the "stream of commerce" theory in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). In *Asahi*, a Japanese company had manufactured a valve that was incorporated into a tire by a Taiwanese tire manufacturer that was placed on a Honda motorcycle that was sold at retail in California. After an accident in California, the motorcycle purchaser sued Honda and the Taiwanese tire manufacturer in a products liability action. The tire manufacturer impleaded the valve manufacturer and settled its claim with the plaintiff. That left only the question of indemnification between the Taiwanese tire manufacturer and the Japanese valve manufacturer to be determined by the California court.

The Supreme Court unanimously held that the valve manufacturer could not be constitutionally required to defend in California; however, four justices, in a plurality opinion authored by Justice O'Connor, also believed the fact that the valve manufacturer introduced its products into the stream of commerce with awareness that a significant portion of them would be sold in California was not sufficient to establish purposeful availment. Some additional evidence, such as evidence that the manufacturer advertised its

products in California showing an intent to serve that market, was required. 480 U.S. at 112-13. The Court of Appeals in this case relied upon this decision in ruling that due process was not met because the defendants had not purposefully directed its sales to Kansas. See *Merriman*, slip op. at 8-9.

The plaintiff argues that the Court of Appeals' reliance on the opinion was erroneous because *Asahi* was a plurality decision. Relying upon the stream of commerce theory, the plaintiff contends the court can infer from the defendants' sales of chemicals to major national tire manufacturers that the defendants knew their product would be used to manufacture tires that would be sold in all 50 states, including Kansas. This argument garners some support in the concurring opinion in *Asahi*, in which four justices, led by Justice Brennan, disagreed with the idea that "additional conduct" was needed for the application of the stream of commerce theory. Justice Brennan stated:

"The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. . . . A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity." 480 U.S. at 117 (Brennan, J., concurring).

In the aftermath of *Asahi*, some courts have adopted the approach taken by Justice Brennan, designating it as the broad approach, while others have followed the approach taken by Justice O'Connor, designating it as the restrictive approach. Compare *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir. 1993), and *Dehmlow v. Austin Fireworks*, 963 F.2d 941 (7th Cir. 1992), with *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994), and *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992).

As applied in this case, there are several considerations to be weighed in considering the conflicting views regarding the application of *Asahi* and *World-Wide Volkswagen*. First, both *Asahi* and *World-Wide Volkswagen* are products liability cases, raising the question of whether the theory should be applied in a price-fixing case. Other courts have expanded the application of the stream of

commerce theory to provide a basis for personal jurisdiction in cases involving patent, copyright, and trademark infringement and violations of federal antitrust, tax, and environmental laws. See Dayton, *Personal Jurisdiction and the Stream of Commerce*, 7 Rev. Litig. 239, 261 n.73 (1988) (digesting cases). And, at least one court has used the theory to find jurisdiction over an antitrust claim involving a price-fixing conspiracy. See *Hitt*, 399 F. Supp. 838 (upholding jurisdiction under tortious act provisions of various state long arm statutes where foreign defendant caused its products to be shipped and sold in U.S.). We see no basis to depart from this generally accepted view and, therefore, conclude that the stream of commerce theory can be applied to provide a basis for personal jurisdiction in a case involving a price-fixing conspiracy.

Next, we must consider the statements in the plurality opinions in *Asahi* in the context of *World-Wide Volkswagen* and other decisions of the Supreme Court. See 4 Gard & Casad, Kansas Law and Practice, Kan. C. Civ. Proc. Annot. § 60-308, p. 427 (4th ed. 2003) (because *Asahi* did not overrule *World-Wide Volkswagen* stream of commerce theory still valid without considering stream of commerce plus). When other cases are considered, it becomes apparent that even the broad view of the stream of commerce theory is not as broad as the plaintiff would suggest. *World-Wide Volkswagen* requires something more than the mere placing of goods into the stream of commerce and the ability to foresee that the product would eventually make its way into goods sold in Kansas. The decision requires that the sale of a product arise "from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States." 444 U.S. at 297.

In an earlier decision, *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), the Court stated "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." In yet another case, the Court explained: "The 'purposeful availment' requirement ensures that a defendant will not be hailed into a jurisdiction solely as a result of 'random,' 'fortui-

tous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475. Rather, to satisfy due process foreseeability, a defendant's contacts must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. [Citation omitted.]." 471 U.S. at 476. Our reading of *World-Wide Volkswagen* and *Asahi* is that the Supreme Court has not abandoned the *International Shoe* test as further articulated in *Burger King.* Notwithstanding the breadth of the stream of commerce language in *World-Wide Volkswagen,* the entire opinion indicated that jurisdiction must rest on a person's activity deliberately directed toward the forum state. This remains the touchstone of the minimum contacts analysis. Furthermore, the decisions of this court have consistently required a purposeful availment. See *In re Hesston Corp.,* 254 Kan. at 959.

As the defendants in this case point out, the burden of making even a prima facie case of purposeful availment is more difficult when the defendant is the supplier of raw materials or component parts used in a manufacturing process. Some courts have upheld the exercise of jurisdiction over suppliers of component parts and raw materials where knowledge that the product would be used in other states could be inferred from the suppliers' business dealings with manufacturers of the completed product. See, *e.g., In re San Juan Dupont Plaza Hotel Fire Lit.,* 742 F. Supp. 717 (D.P.R. 1990); *Louis Winer v. San Francisco Mercantile,* 501 So. 2d 171 (Fla. Dist. App. 1987); *Dahmes v. Champagne Elevators, Inc.,* 869 So. 2d 904 (La. App. 2004); *State ex rel. CSR Ltd. v. McQueen,* 190 W. Va. 695, 441 S.E.2d 658 (1994).

However, many other courts have rejected this view. In suits similar to this case, at least two courts have determined it would violate due process to exercise jurisdiction over Crompton, Flexsys, and Bayer when faced with price-fixing allegations similar to those raised in this case and under similar jurisdictional facts (these cases did not involve general jurisdiction issues and did not allege any chemical sales in the state such as alleged in this case with the sales to the Topeka Goodyear plant): *Lorix v. Crompton Corp.,* 680 N.W.2d 574 (Minn. App. 2004), and *Frankenfeld v. Crompton Corp.,* 697 N.W.2d 378 (S.D. 2005). Other courts have reached

the same conclusions in cases involving other component parts or raw materials. *E.g.*, *In re Minnesota Asbestos Litigation*, 552 N.W.2d 242 (Minn. 1996); *CSR Ltd. v. Link*, 925 S.W.2d 591 (Tex. 1996).

One such case has many factual similarities to the present case and applied the Kansas long arm statute. *Four B Corp. v. Ueno Fine Chemicals Industry, Ltd.*, 241 F. Supp. 2d 1258 (D. Kan. 2003), involved a class action arising out of an alleged international conspiracy to fix the prices of sorbates, including potassium sorbate and sorbic acid, which are chemical preservatives used in food products. Plaintiffs allegedly purchased products containing sorbates that were manufactured and sold by defendants. The defendants did not manufacture the products in Kansas and did not sell their products directly to consumers. The court applied the restrictive view of Justice O'Connor's opinion and determined that due process did not allow asserting jurisdiction over the defendants. 241 F. Supp. 2d at 1268-70. Citing *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1095-96 (10th Cir. 1998), the court applied a test similar to that adopted in Kansas in *White v. Goldthwaite*, 204 Kan. 83, Syl. ¶ 3, 460 P.2d 578 (1969). The first prong of each test embodies the concept of purposeful availment; the second requires the nexus between that action and the harm.

When the analysis in this case is limited to the product stream resulting in the plaintiff's purchase of two tires not manufactured in Kansas, the nexus is lacking in this case. All that connects the defendants' actions and the plaintiff's injury arising from the purchase of tires is the fortuitousness of the plaintiff's residence. There is no indication that the defendants have any control over or collaboration with the tire manufacturers as to where they market their tires. Thus, as it relates to the sales of chemicals to a manufacturer in another state that made the tires which the plaintiff purchased, there is no showing that a defendant's contacts with Kansas "proximately result[ed] from actions by the defendant *himself* that create a 'substantial connection' with the forum State. [Citations omitted.]." *Burger King*, 471 U.S. at 476.

The plaintiff urges us to look more broadly than at the tire purchase which injured the plaintiff and to consider the nexus estab-

lished with Kansas because of the defendants' sales to Goodyear in Topeka. This argument blurs the distinction, at least somewhat, between general and specific jurisdiction. The stream of commerce theory does not apply to a general jurisdiction analysis. See *Huffy Corp. v. Overload Industries*, 246 F. Supp. 2d 1093, 1099 (D. Nev. 2003) (holding that defendant's "placement of products into the stream of commerce does not support this Court's exercise of general jurisdiction"); see also *Purdue Research v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 (7th Cir. 2003) (stream of commerce theory "is relevant only to the exercise of specific jurisdiction; it provides no basis for exercising general jurisdiction over a nonresident defendant"); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000) ("We have specifically rejected a party's reliance on the stream-of-commerce theory to support asserting general jurisdiction over a nonresident defendant.").

However, as the plaintiff argues, the sales to Goodyear are in furtherance of the same conspiracy that led to his paying an inflated price and, thus, to his damages. Thus, plaintiff argues there is a nexus and a purposeful availment of the protection of Kansas laws when the defendants entered into business transactions in the State of Kansas where those transactions were a part of the conspiracy at issue.

Some courts have concluded that knowledge of and voluntary participation in a conspiracy with other individuals who have physical, in-state presence does not offend due process and allows the court to extend personal jurisdiction over a nonresident who may lack specific, individualized contacts with the forum state. See *Istituto Bancario Italiano v. Hunter Eng. Co.*, 449 A.2d 210, 225 (Del. 1982) ("[A] defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws."); *Rudo v. Stubbs*, 221 Ga. App. 702, 703-04, 472 S.E.2d 515 (1996) (recognizing that coconspirators are agents of each other for purposes of personal jurisdiction when acting in furtherance of conspiracy but requiring

specific facts of activity purposefully directed toward Georgia residents).

In *Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 752 So. 2d 582 (Fla. 2000), the plaintiff alleged the manufacturers of thermal facsimile paper conspired to fix the wholesale price of jumbo rolls of paper in violation of the Florida Deceptive and Unfair Trade and Practices Act. The Florida Supreme Court held the Japanese manufacturer was subject to personal jurisdiction in Florida. First, the court concluded that the statutory prong of the analysis was satisfied, observing that New Oji and the other conspirators committed a tortious act on Florida soil. The Florida long arm statute was remarkably similar to the Kansas long arm statute. Second, the court determined that the plaintiff's complaint satisfied the constitutional prong of the test because it alleged "sufficient minimum contacts between Florida and New Oji to satisfy due process concerns." The court focused on "the nexus between the (1) forum state, (2) the foreign corporation, and (3) the price (*i.e.*, the inflated price paid by Florida consumers for the conspirators' price-fixed paper)." 752 So. 2d at 585. The court further pointed out the plaintiff alleged the paper produced and distributed by the conspirators was sold at a correspondingly inflated retail price in every state, including Florida.

Likewise, in *Mackey v. Compass*, 391 Md. 117, 892 A.2d 479 (2006), the Maryland Supreme Court found the conspiracy theory of jurisdiction to be consistent with due process. The court observed that, under the conspiracy theory of personal jurisdiction, a coconspirator to whom the acts of another coconspirator are attributed must have agreed to participate in a conspiracy that he or she could reasonably have expected at the time of the agreement to involve forum-related actions, and, therefore, the acts attributed are not simply unilateral acts of the coconspirator who literally performed them. The jurisdiction is based on the coconspirator's deliberate choice to enter into the coconspiracy. The *Mackey* court succinctly stated:

"Because the conspiracy theory gives one subject to personal jurisdiction in a forum the ability to avoid in advance being subject to suit in the forum, it satisfies the fundamental due process requirement that a defendant can be involuntarily

subjected to the personal jurisdiction of a forum only if the defendant 'purposefully avails itself of the privilege of conducting activities in the forum state.' [Citations omitted.]." 391 Md. at 135.

Further, it has been observed that asymmetry would result if coconspirators are allowed to enjoy the benefits and protections of the forum state's laws without being subject to personal jurisdiction in that forum. See *Hunt v. Nevada State Bank*, 285 Minn. 77, 111-12, 172 N.W.2d 292 (1969). For other cases recognizing conspiracy theory jurisdiction, see, *e.g.*, *Remmes v. International Flavors & Fragrances, Inc.*, 435 F. Supp. 2d 936 (N.D. Iowa 2006); *Jung v. Association of American Medical Colleges*, 300 F. Supp. 2d 119 (D.D.C. 2004); *Kohler Co. v. Kohler Intern., Ltd.*, 196 F. Supp. 2d 690 (N.D. Ill. 2002); *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95 (E.D.N.Y. 2000); *Sante Fe Technologies v. Argus Networks*, 131 N.M. 772, 42 P.3d 1221 (Ct. App. 2001); *Chenault v. Walker*, 36 S.W.3d 45 (Tenn. 2001).

With regard to cases which have not recognized the conspiracy theory of jurisdiction, some criticism appears to focus on whether the Due Process Clause permits a state to assert extra-territorial jurisdiction over a person or entity that did not foresee that the conspirators would commit acts within that state. See, *e.g.*, *In re New Motor Vehicles Canadian Export*, 307 F. Supp. 2d 145, 157-58 (D. Me. 2004); *Steinke v. Safeco Ins. Co. of America*, 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003); *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 672 (W.D. Wis. 1998); *Karsten Mfg. Corp. v. United States Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz. 1990).

This concern does not apply in this case, at least under the allegations made by the plaintiff. Each defendant, as an alleged coconspirator to which the acts of another coconspirator are attributed, agreed to participate in a conspiracy that, at the time of the agreement, could reasonably have been expected to reach Kansas consumers. Indeed the conspiracy was aimed at wide-spread price fixing. Furthermore, acts in furtherance of the conspiracy were committed in Kansas through the sales to Goodyear. These acts are not simply unilateral acts of one or two of the coconspirators but of all the conspirators. At least one of the affiliated companies in each of the three affiliated groups of companies—Crompton/

Uniroyal, Flexsys, Bayer—sold products in Kansas pursuant to the alleged conspiracy. The alleged conspiracy resulted in alleged economic harm to the plaintiff in Kansas. Jurisdiction over this tortious action can be based on the coconspirators' deliberate choice to enter into the coconspiracy.

Another strong factor in the plaintiff's favor is the consideration of what benefits and protection of the laws of the forum state are afforded to the respective parties. Kansas has a strong interest in protecting the rights of its citizens and providing a forum convenient for the redress of wrongs done to Kansans. Moreover, the plaintiff is seeking application of the Kansas Restraint of Trade Act, K.S.A. 50-101 *et seq.* The interpretation of this Act is better left to Kansas courts than those of a foreign forum where the plaintiff would otherwise be forced to seek redress.

Therefore, considering the allegations of the plaintiff's petition and in balancing the general equities of the situation, we conclude the exercise of specific jurisdiction pursuant to K.S.A. 60-308(b)(2) against price-fixing coconspirators under the facts alleged in the plaintiff's petition would not violate due process.

Reversed and remanded.