(260 P.3d 1218)
No. 104,644

MELANIE A. FISHER, *Appellant*, v. ALEX F. DECARVALHO, M.D., *Appellee*.

1134

Opinion filed June 24, 2011.

*Lynn R. Johnson* and *David R. Morantz*, of Shamberg, Johnson & Bergman, Chartered, of Kansas City, Missouri, for appellant.

*Janet M. Simpson* and *Trevin Wray*, of Holbrook & Osborn, P.A., of Overland Park, for appellee.

Before MALONE, P.J., PIERRON and ARNOLD-BURGER, JJ.

MALONE, J.: Melanie A. Fisher appeals the district court's decision dismissing with prejudice her cause of action against Alex F. DeCarvalho, M.D., on the ground that Fisher failed to properly serve process on DeCarvalho prior to the expiration of the statute of limitations. Fisher claims the district court erred in dismissing her cause of action because she substantially complied with the statutory method for service of process by certified mail, and DeCarvalho acknowledged service by making a voluntary entry of appearance. Alternatively, Fisher claims the district court erred by failing to grant her an additional 90 days to serve process pursuant to K.S.A. 60-203(b) after the district court found service to be invalid. For the reasons set forth herein, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2009, Fisher filed a petition against DeCarvalho in district court alleging negligent performance of an arthroscopic surgical procedure performed on October 1, 2007. Fisher chose not to attempt personal service of process on DeCarvalho through the sheriff's office or a process server, as she believed this method of service would disrupt DeCarvalho's medical practice. Thus, on November 20, 2009, Fisher filed a request with the clerk of the district court for the issuance of a summons by certified mail. Fisher made no attempt to mail the summons and petition to

DeCarvalho's dwelling house or usual place of abode. However, on November 30, 2009, Fisher's attorney mailed the summons and petition to DeCarvalho's medical office via certified mail, return receipt requested. The certified mail did not request restricted delivery. On December 14, 2009, Fisher filed a return of service with the district court and attached a copy of the return receipt, which indicated that an unknown third person named Phyllis Bieker received and signed for the petition on December 2, 2009. The return receipt did not designate Bieker as DeCarvalho's agent.

On December 23, 2009, the district court granted DeCarvalho a 10-day extension of time to file a responsive pleading. On January 4, 2010, DeCarvalho filed an answer setting forth several affirmative defenses including improper service of process, lack of personal jurisdiction, and expiration of the statute of limitations. On March 1, 2010, DeCarvalho served interrogatories and a request for production of documents on Fisher. On March 3, 2010, DeCarvalho responded to Fisher's interrogatories and request for production of documents.

On April 26, 2010, DeCarvalho filed a motion for judgment on the pleadings for lack of personal jurisdiction alleging that Fisher failed to effect personal service of process prior to the expiration of the applicable statute of limitations. Specifically, DeCarvalho argued that Fisher's attempt to serve him by certified mail at his place of business was invalid because Fisher failed to follow the procedure set forth in K.S.A. 60-304(a). DeCarvalho asserted that Fisher's attempt at service could not be deemed as substantial compliance with the statute. Moreover, DeCarvalho contended that his knowledge of the pending lawsuit was not a substitute for proper service of process.

In her response, Fisher argued that although the service of process upon DeCarvalho by certified mail was technically flawed under K.S.A. 60-304(a), it was valid under K.S.A. 60-204 because she substantially complied with the statutory method of service of process. Fisher claimed that DeCarvalho had actual knowledge of the litigation as evidenced by the filing of his answer and discovery requests. Alternatively, Fisher asserted that should the district

court decide that service was invalid, she should be granted an additional 90 days to serve process pursuant to K.S.A. 60-203(b).

On May 26, 2010, the district court issued an order of dismissal with prejudice. The district court found that Fisher had failed to properly serve DeCarvalho, and as a result, the district court did not acquire personal jurisdiction prior to the expiration of the statute of limitations. The district court explained that Fisher did not attempt to serve DeCarvalho at his dwelling house or usual place of abode; thus, Fisher did not satisfy the prerequisite for serving an individual by certified mail at a place of business. The district court also found that Fisher did not attempt service by mail at the business address via restricted delivery, and the pleadings did not indicate that the individual who actually received service was authorized to accept service on DeCarvalho's behalf. The district court found that Fisher did not comply with K.S.A. 60-304(a) in any respect; thus, the district court could not conclude that Fisher substantially complied with the statutory method of service of process such that service was rendered valid under K.S.A. 60-204. The district court further found that DeCarvalho's actual knowledge of the lawsuit did not confer jurisdiction upon the court. Finally, the district court found that the original service of process did not appear to be valid; thus, the district court determined that Fisher was not entitled to receive an additional 90 days to serve process pursuant to K.S.A. 60-203(b). Fisher timely appealed the district court's decision.

The overarching issue on appeal is whether the district court erred when it dismissed Fisher's cause of action with prejudice because of improper service of process. Fisher contends that although her attempt to serve DeCarvalho at his business address via certified mail may have been technically flawed, she substantially complied with the statutory method of service of process such that service was rendered valid under K.S.A. 60-204. Fisher also contends that DeCarvalho made a voluntary entry of appearance under K.S.A. 60-303(e) when he filed a responsive pleading and participated in discovery; thus, he waived the defenses of improper service of process and lack of personal jurisdiction. Finally, Fisher asserts that if the service of process was invalid, the district court

erred by denying her request for an additional 90 days to serve process pursuant to K.S.A. 60-203(b).

A district court's dismissal of a cause of action for lack of personal jurisdiction based on the pleadings is subject to de novo review. *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006). Furthermore, Fisher's arguments on appeal involve the interpretation of statutory language. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). When interpreting a statute, an appellate court must first attempt to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). An appellate court does not speculate as to the legislative intent when a statute is plain and unambiguous and will not read into the statute something not readily found within it. Where there is no ambiguity in the statutory language, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009).

A brief review of Kansas rules of civil procedure and limitations of action will help establish the framework for this appeal. A district court obtains personal jurisdiction over a defendant only when a lawsuit is properly commenced. Under K.S.A. 60-203(a), a civil action is commenced upon filing a petition if service of process is obtained within 90 days after the petition is filed, except the court may extend that time an additional 30 days upon a showing of good cause. Assuming the process is served within the time parameters of the statute, the civil action is deemed commenced and relates back to the date the petition is filed. If service of process is not made within the time specified by the statute, the civil action is

deemed commenced when service of process is completed. K.S.A. 60-203(a).

Pursuant to K.S.A. 60-513(a)(7), a cause of action alleging medical negligence must be commenced within 2 years of the date of the injury or the time the injury is reasonably ascertainable in order to satisfy the statute of limitations. In this case, the parties agree that the applicable statute of limitations for Fisher's medical negligence action expired on October 1, 2009. Fisher filed her petition on October 1, 2009, on the 2-year anniversary date of her injury. Although Fisher met the deadline for filing her petition, she still needed to obtain service of process on DeCarvalho within the time parameters of K.S.A. 60-203(a), in order for her civil action to be commenced within the applicable statute of limitations. In Fisher's case, she needed to properly serve DeCarvalho by December 30, 2009, unless this deadline was extended for an additional 30 days upon a showing of good cause, in order for her lawsuit to be commenced within the applicable statute of limitations.

## SERVICE BY CERTIFIED MAIL

DeCarvalho contends that Fisher never served him with process. Before we analyze the applicable rules of civil procedure and service of process, we note that in 2010, the Legislature amended many of the statutes we will be addressing in this opinion; in particular K.S.A 60-102, K.S.A. 60-203(a) and (b), K.S.A. 60-204, K.S.A. 60-212(h), K.S.A. 60-303(c) and (e), and K.S.A. 60-304(a). It appears that most of the amendments were an attempt to clarify language without making any substantive changes in the statutes. The only substantive change applicable to our discussion is that K.S.A. 60-304(a) was amended to delete a requirement of "restricted delivery" for service of process by certified mail. However, even this amendment did not go into effect until July 1, 2010, which was after the district court dismissed Fisher's case. Accordingly, throughout this opinion, we will be citing and relying upon the statutes prior to the 2010 amendments, as they relate to the facts of this case.

K.S.A. 60-303 describes the permissible methods of service of process. K.S.A. 60-303(c) authorizes service by return receipt de-

livery effected through "certified mail, priority mail, commercial courier service, overnight delivery service, or other reliable personal delivery service to the party addressed, in each instance evidenced by a written or electronic receipt showing to whom delivered, the date of delivery, the address where delivered, and the person or entity effecting delivery." Fisher chose to attempt service of process on DeCarvalho by certified mail.

K.S.A. 60-304 delineates the proper procedure for effecting service of process, and subsection (a) states that an individual, other than a minor or disabled person, must be served:

"by serving the individual or by serving an agent authorized by appointment or by law to receive service of process, but if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given. Service by return receipt delivery shall be addressed to an individual at the individual's dwelling house or usual place of abode and to an authorized agent at the agent's usual or designated address. If service by return receipt delivery to the individual's dwelling house or usual place of abode is refused or unclaimed, the sheriff, party or party's attorney seeking service may complete service by certified mail, restricted delivery, by serving the individual at a business address after filing a return on service stating the return receipt delivery to the individual at such individual's dwelling house or usual place of abode has been refused or unclaimed and a business address is known for such individual."

Fisher attempted to serve DeCarvalho by certified mail at his business office. However, an individual may only be served at a business address by certified mail if the following conditions have been satisfied: (1) the plaintiff first attempts to serve the individual by return receipt delivery at the individual's dwelling house or usual place of abode; (2) the plaintiff files a return on service indicating that delivery at the individual's dwelling house or usual place of abode was refused or unclaimed; and (3) the certified mail is then sent to the business address via restricted delivery.

As the district court noted, nothing in the record indicates that Fisher satisfied any of these prerequisites before she attempted to serve DeCarvalho at his business address. Fisher makes no claim that she first attempted to serve DeCarvalho by return receipt delivery at his dwelling house or usual place of abode. Furthermore, the record does not reflect a return on service indicating that delivery at DeCarvalho's dwelling house or usual place of abode was

refused or unclaimed. Finally, Fisher's attempt to serve De-Carvalho by certified mail at his business address was not sent by restricted delivery, which would have ensured delivery was made to the proper party.

DeCarvalho also argues that Fisher failed to comply with the procedure outlined in K.S.A. 60-304(a) because she failed to ensure that either he or his authorized agent received service. DeCarvalho is correct in this assertion, as the return receipt states that an unknown third person named Phyllis Bieker received the petition on December 2, 2009. As the district court noted, the return receipt did not designate Bieker as DeCarvalho's agent and the record does not indicate that Bieker was authorized to accept service on DeCarvalho's behalf. Thus, Fisher did not properly serve process on DeCarvalho when she attempted to serve him at his business address via certified mail, as she did not comply with the procedure outlined in K.S.A. 60-304(a).

## SUBSTANTIAL COMPLIANCE UNDER K.S.A. 60-204

Fisher argues that despite any technical irregularities or omissions in service, she substantially complied with the statutory method of service of process such that service was rendered valid under K.S.A. 60-204. DeCarvalho responds that Fisher cannot demonstrate substantial compliance when she failed to comply with the applicable service of process statutes in any respect.

K.S.A. 60-204 provides in pertinent part:

"In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected."

K.S.A. 60-204 does not define "substantial compliance." However, in *Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 874, 127 P.3d 319 (2006), the Kansas Supreme Court provided a definition of "substantial compliance" as the term is used in K.S.A. 2004 Supp. 12-105b(d). At the time *Myers* was decided, K.S.A. 2004 Supp. 12-105b(d) provided:

"Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. . . . *In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim.*" (Emphasis added.) 280 Kan. at 871.

Although the term "substantial compliance" is not defined in K.S.A. 2004 Supp. 12-105b, the court explained the term has been defined by case law as meaning "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." 280 Kan. at 874. After articulating this definition, the court discussed case law involving K.S.A. 2004 Supp. 12-105b and K.S.A. 60-204, as both statutes involve compliance with applicable service of notice provisions. 280 Kan. at 874-77. Due to the similarity in the purpose of the two statutes, it is reasonable to conclude that the "substantial compliance" language in K.S.A. 60-204 is to be defined in the same manner as in K.S.A. 2004 Supp. 12-105b(d). In fact, in *Taylor ex rel. Gibbens v. Medicalodges, Inc.*, No. 102,539, unpublished opinion filed August 20, 2010 (Kan. App.), *rev. denied* 292 Kan. 969 (2011), a panel of this court indicated that the definition of "substantial compliance" outlined in *Myers* applied not only to K.S.A. 2004 Supp. 12-105b(d), but to K.S.A. 60-204 as well. Slip op. at 6.

When the definition articulated above is applied to the facts of this case, it is clear that Fisher's attempt to serve DeCarvalho does not constitute "substantial compliance" with the statutory method of service of process, as Fisher did not comply with the essential matters necessary to assure every reasonable objective of K.S.A. 60-304(a). As noted above, Fisher failed to satisfy any of the prerequisites for serving an individual at a business address by certified mail. Fisher did not first attempt to serve DeCarvalho at his dwelling house or usual place of abode by certified mail, she did not file a return on service indicating that delivery at DeCarvalho's dwelling house or usual place of abode was refused or unclaimed, and she did not send the certified mail to the business address via restricted delivery. Most importantly, service was not actually made

upon DeCarvalho or his authorized agent, which is the most important objective of any method of service of process.

The Kansas Supreme Court examined the substantial compliance provisions of K.S.A. 60-204 in *Haley v. Hershberger*, 207 Kan. 459, 485 P.2d 1321 (1971), *superseded by statute on other grounds as stated in Myers*, 280 Kan. 869 (2006). In *Haley*, the plaintiff attempted to serve process by leaving a copy of the summons and petition at the defendant's business office with the defendant's secretary. 207 Kan. at 461. The court determined that "[l]eaving a copy of a petition and summons with the secretary of the defendant is not substantial compliance with any of the provisions mentioned for personal service. The secretary was not an authorized agent to receive service of process. [Citation omitted.]" 207 Kan. at 463.

The court in *Haley* indicated there must be substantial compliance with some statutory method of service of process before the provisions of K.S.A. 60-204 have any validating effect. Assuming there is substantial compliance with some statutory method of service of process, irregularities or omissions will then be ignored if the court finds that the party to be served was made aware that an action or proceeding was pending. 207 Kan. at 464 (citing *Briscoe v. Getto*, 204 Kan. 254, 257, 461 P.2d 127 [1969]); see also *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 812, 987 P.2d 1096 (1999) (fact that a party has actual knowledge of the pendency and the nature of an action is not a substitute for service; notice or knowledge must come from service of process, or there must be a valid waiver).

Fisher contends that *Haley* is not persuasive because it was superseded when the legislature amended K.S.A. 60-304 in 1990. DeCarvalho acknowledges the statutory amendment. However, as DeCarvalho points out, the Kansas Supreme Court in *Myers* reaffirmed *Haley* with regard to the proposition that courts cannot apply the substantial compliance doctrine to adopt new, judicially created methods for serving process beyond the methods established by the legislature. *Myers*, 280 Kan. at 875.

This court examined the substantial compliance provisions of K.S.A. 60-204 in *Cook v. Cook*, 32 Kan. App. 2d 214, 220, 83 P.3d 1243 (2003), *rev. denied* 277 Kan. 923 (2004). In *Cook*, the plaintiff

failed to properly serve process upon the defendant under any statutory provision. However, the district court refused to dismiss the case finding that the plaintiff had substantially complied with the intent of the laws governing service of process because the defendant had actual knowledge of the pendency of the action. On appeal, this court determined that actual knowledge of the pendency and nature of an action is not a substitute for service. 32 Kan. App. 2d at 220. Under the facts of the case, the court found that service on the defendant was not merely irregular or defective, but was a nullity. The court concluded the fact that the defendant had actual knowledge of the lawsuit and did not suffer any prejudice did not mean there was substantial compliance under K.S.A. 60-204, and the district court erred in so finding. 32 Kan. App. 2d at 222; see also *Le v. Joslin,* 41 Kan. App. 2d 280, 293, 202 P.3d 677 (2009) (actual knowledge of the pendency of an action is not a substitute for service; otherwise, it would be meaningless for a party to ever assert insufficiency of service of process as a defense).

*Marshall v. Wendt,* No. 97,405 unpublished opinion filed November 30, 2007 (Kan. App.), provides considerable persuasive guidance as the facts in that case are essentially identical to the facts herein. In *Marshall,* the plaintiff filed a medical malpractice petition and attempted to serve the defendant by certified mail at the defendant's business address. The plaintiff did not request restricted delivery, and an individual at the defendant's place of business signed the delivery receipt. After the defendant obtained an extension of time to serve a responsive pleading, the defendant filed an answer raising the affirmative defenses of insufficient service of process and expiration of the statute of limitations. Approximately 3 months later, the defendant filed a motion to dismiss alleging expiration of the statute of limitations due to insufficient service of process, which the district court granted.

On appeal, the plaintiff acknowledged the deficiencies in his attempt to serve the defendant but argued that service was valid under K.S.A. 60-204 because he substantially complied with the applicable service of process statutes and the defendant had actual knowledge of the lawsuit. This court rejected the plaintiff's argument and concluded there was not substantial compliance with

service of process, "[i]n light of the numerous defects in the attempted service of process (failure to attempt to serve [defendant] at his residence, failure to serve at a business address by restricted mail, and failure to serve an authorized agent)." Slip op. at 11-12.

Fisher cites Kansas federal district court cases as persuasive authority in support of her argument that she substantially complied with the service of process statutes pursuant to K.S.A. 60-204. In *Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1095-96 (D. Kan. 2007), the federal district court found that the plaintiff substantially complied with K.S.A. 60-304 when he sent the summons to the defendant's place of business by certified mail without first attempting to serve the defendant at her residence. The court found that service was valid under K.S.A. 60-204 because service of process at the defendant's place of business was "a method contemplated by Section 60-304(a)," and the defendant filed an answer indicating he was made aware of the pending action. 483 F. Supp. 2d at 1096; see also *Ledbetter v. City of Topeka, Kan.*, 112 F. Supp. 2d 1239 (D. Kan. 2000) (plaintiff substantially complied with service of process by mailing summons to defendant's business address without first attempting to serve defendant at residence).

DeCarvalho points out that in actuality, there is a split of opinion among the federal district courts on the application of the substantial compliance provisions of K.S.A. 60-204. For instance, in *Fulcher v. City of Wichita*, 445 F. Supp. 2d 1271, 1275 n.1 (D. Kan. 2006), the federal district court found that "[a] 'new method of service,' such as serving an individual at his place of business without first attempting service at his residence, does not satisfy K.S.A. § 60-204. [Citation omitted.]" See also *Taylor v. Osawatomie State Hospital*, No. 07-2346, 2008 WL 2891011 (D. Kan. 2008) (unpublished opinion) (initial service of process at a business address is ineffective under Kansas law); *Huebner v. Rosen*, 81 Fed. Appx. 276, 278-79 (10th Cir. 2003) (unpublished opinion) (same finding).

Although some decisions from the Kansas federal district court provide persuasive authority in support of Fisher's argument, the Kansas appellate court decisions in *Meyers, Haley,* and *Cook,* support DeCarvalho's argument that Fisher cannot demonstrate sub-

stantial compliance with the statutory method of service of process. The simple fact that K.S.A. 60-304(a) allows a plaintiff to serve a defendant at a business address is insufficient to establish that Fisher substantially complied with the proper method of process. The defects in Fisher's service of process were more than mere irregularities or omissions. Fisher failed to attempt to serve De-Carvalho at his residence, and she failed to file a return on service indicating that delivery at the residence was refused or unclaimed. Fisher also failed to serve DeCarvalho at his business address by restricted mail. Most importantly, the certified mail delivery was received and signed for by Phyllis Bieker, who was not De-Carvalho's authorized agent. Fisher not only failed to comply with the procedure outlined in K.S.A. 60-304(a), she defied the main purpose of the statute when she served process upon an unknown third party. As the district court concluded, "to equate [Fisher's] non-compliance with substantial compliance would render the service statute meaningless."

Fisher argues that DeCarvalho was made aware of her lawsuit notwithstanding the irregularity in service of process, so it follows that Fisher substantially complied with the method of process. But Fisher's argument reverses the steps in the proper analysis of K.S.A. 60-204. Kansas appellate courts indicate there first must be substantial compliance with some statutory method of service of process before the provisions of K.S.A. 60-204 have any validating effect. Assuming there is substantial compliance with some statutory method of service of process, irregularities or omissions will then be ignored if the court finds that the party to be served was made aware that an action or proceeding was pending. *Haley,* 207 Kan. at 464.

Had DeCarvalho or his authorized agent actually signed the receipt for the summons and petition, this case might present the proper facts for application of K.S.A. 60-204, despite the fact that Fisher did not mail the process to the business address by restricted delivery. But here there is no record that the summons and petition were ever delivered to DeCarvalho or his authorized agent. Although it is true that DeCarvalho somehow received notice of the pendency of Fisher's claim, it is not apparent that this notice came

from service of process. DeCarvalho has the right to contest the service of process, and he certainly has the right to challenge the district court's jurisdiction over his person. Courts cannot apply the substantial compliance doctrine to adopt new, judicially created methods for serving process beyond the methods established by the legislature. *Meyers,* 280 Kan. at 875.

K.S.A. 60-204 provides that substantial compliance with any method of serving process shall effect valid service provided that the party served was made aware of the pending action, notwithstanding some irregularity or omission in service. The term "substantial compliance" is defined as compliance with respect to the essential matters necessary to assure every reasonable objective of the statute. Although DeCarvalho was made aware of Fisher's lawsuit as evidenced by his answer and participation in discovery, Kansas case law is clear that mere knowledge of pending litigation is not a substitute for valid service of process. We conclude Fisher did not substantially comply with K.S.A. 60-304(a) when she attempted to serve DeCarvalho at his business address via certified mail because she did not satisfy the most important objective of service of process, *i.e.,* actual service upon DeCarvalho or his authorized agent. Therefore, the service of process cannot be deemed valid under K.S.A. 60-204.

## VOLUNTARY ENTRY OF APPEARANCE

Next, Fisher argues that DeCarvalho made a voluntary entry of appearance when he requested additional time to file a responsive pleading, filed an answer, and participated in discovery; thus, service of process was effective pursuant to K.S.A. 60-303(e). De-Carvalho responds by pointing out that Fisher did not properly preserve this issue for appeal because she failed to raise the argument before the district court. On the merits of the issue, DeCarvalho contends that he did not waive the defenses of insufficiency of service of process or lack of personal jurisdiction through a voluntary entry of appearance because he raised both of these affirmative defenses in his answer pursuant to K.S.A. 60-212(h).

As DeCarvalho points out, Fisher did not argue in district court that DeCarvalho made a voluntary entry of appearance under K.S.A. 60-303(e). Generally, issues not raised before the district court cannot be raised on appeal. *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009). However, an exception to the general rule exists when the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008). This exception applies herein. The district court decided the motion to dismiss based solely upon the pleadings, and there were no disputed facts on the issue of service of process. Also, whether DeCarvalho made a voluntary appearance under K.S.A. 60-303(e) involves only a question of law. Finally, if Fisher is successful in her argument, this question will result in a final resolution of the appeal. Accordingly, we will consider the merits of Fisher's argument on this issue.

K.S.A. 60-303(e) provides that "[t]he voluntary appearance by a defendant is equivalent to service as of the date of appearance." Under this statute, service is deemed to occur on the date the defendant makes a voluntary entry of appearance. As we previously discussed, Fisher had until December 30, 2009, to properly commence her cause of action in order to avoid the statute of limitations bar. The record reflects that the district court granted DeCarvalho a 10-day extension of time to file a responsive pleading on December 23, 2009, and DeCarvalho filed an answer on January 4, 2010. Thus, in order for K.S.A. 60-303(e) to save Fisher's cause of action, DeCarvalho's request for additional time to file a responsive pleading would have to constitute a voluntary entry of appearance. All the other actions Fisher contends equate to a voluntary entry of appearance occurred after the deadline to properly commence her case had expired.

In *Haley*, the Kansas Supreme Court expressly held that the filing of a motion for extension of time to answer may not be regarded as a waiver of lack of jurisdiction of the person of defendant because of insufficiency of process, or insufficiency of service of process. 207 Kan. 459, Syl. ¶ 4. The court in *Haley* relied on K.S.A. 60-212(h), which provides that the defense of lack of jurisdiction

of the person is waived only when it is not raised by motion or in the answer itself. As the court explained, "K.S.A. 60-212 has abolished the old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him." 207 Kan. at 465.

Fisher argues that *Haley* is no longer good law because K.S.A. 60-303(e) was enacted by the legislature after the *Haley* decision in 1971. We disagree. When the legislature enacted the language now contained in K.S.A. 60-303(e), it was not a change in the law. See L. 1990, ch. 202, secs. 4 and 5. When *Haley* was decided in 1971, nearly the exact language of what is now K.S.A. 60-303(e) existed in K.S.A. 60-304(h) (Corrick 1963). Furthermore, in *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 106 P.3d 492 (2005), the Kansas Supreme Court addressed the issue of waiver through a voluntary of entry of appearance and quoted with approval the following passage from the *Haley* opinion:

" 'The defense of lack of jurisdiction of the person is waived only when it is not raised by motion or in the answer itself. This is clearly stated by the express terms of K.S.A. 60-212(*h*). The defense is then waived not because of the defendant's voluntary appearance, but because of the failure to assert the defense within the time prescribed by the rules.' [Citation omitted.]" *Pieren-Abbott*, 279 Kan. at 100.

As DeCarvalho asserts, his answer set forth several affirmative defenses including improper service of process, lack of personal jurisdiction, and expiration of the statute of limitations. Thus, it is clear that DeCarvalho did not waive these defenses pursuant to K.S.A. 60-212(h). Furthermore, DeCarvalho had no obligation to make a special appearance to raise these defenses prior to filing his answer. Therefore, DeCarvalho did not make a voluntary entry of appearance when he requested additional time to file a responsive pleading, so as to render service valid under K.S.A. 60-303(e).

### ADDITIONAL 90 DAYS TO SERVE PROCESS UNDER K.S.A. 60-203(b)

Alternatively, even if Fisher's attempt to serve DeCarvalho was invalid, Fisher contends that the district court erred by not affording her an additional 90 days to properly serve process pursuant to K.S.A. 60-203(b). Fisher argues that she was unable to cure the

alleged defect in service prior to the expiration of the statute of limitations, due to DeCarvalho's failure to raise the defense in a timely manner. DeCarvalho responds that K.S.A. 60-203(b) is not applicable because Fisher could not rely in good faith upon an attempt at service that did not appear to be valid.

K.S.A. 60-203(b) provides as follows:

"If service of process or first publication purports to have been made but is later adjudicated to have been invalid due to any irregularity in form or procedure or any defect in making service, the action shall nevertheless be deemed to have been commenced at the applicable time under subsection (a) if valid service is obtained or first publication is made within 90 days after that adjudication, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff."

K.S.A. 60-203(b) was successfully applied to grant a plaintiff an additional 90 days to serve process in *Hughes v. Martin*, 240 Kan. 370, 729 P.2d 1200 (1986). *Hughes* was a wrongful death action filed against "Lynn E. Martin, Administrator of the Estate of Michael W. Baldwin, deceased." 240 Kan. at 371. The initial summons was returned indicating that the summons and petition were served "upon the defendant Lynn Martin." 240 Kan. at 371. As the court indicated, "the return of the sheriff obviously purport[ed] to serve the proper defendant." 240 Kan. at 371. The defendant filed an answer consisting of a general denial of negligence and also asserting insufficiency of service of process, without setting forth any factual details to support the defense.

Shortly before the pretrial conference, the defendant asserted that the service of process was deficient because the return of service did not indicate that Lynn E. Martin had been served in her capacity as administrator of the estate, and because the summons actually had been delivered to Martin's secretary, and not Martin personally. After conducting a hearing, the district court found there was an irregularity in the service of process upon the defendant, and the service of process was defective. However, the district court granted the plaintiff an additional 90 days to obtain proper service on the defendant pursuant to K.S.A. 60-203(b).

On appeal, the Kansas Supreme Court affirmed the district court's application of K.S.A. 60-203(b). The court noted that K.S.A.

60-102 specifically provides that the provisions of the Kansas Code of Civil Procedure shall be liberally construed to insure the just determination of every action or proceeding. 240 Kan. at 375. Under the facts presented, the original service of process purported to have been made upon the defendant, but was later adjudicated to have been invalid due to an irregularity in form or procedure. Thus, the plaintiff was entitled to receive an additional 90 days for service of process under K.S.A. 60-203(b). The court explained:

"Black's Law Dictionary [citation omitted], defines the verb 'purport' to mean 'to have the appearance of being.' K.S.A. 60-203(b) is also declared to be applicable to any situation where the original service was invalid due to *any irregularity* in form or procedure or *any defect* in making service. The use of the word *any* makes crystal clear the legislative intent that the statute is to be liberally applied in cases involving *any irregularity* or *any defect* in the service of process." 240 Kan. at 375-76.

*Hughes* provides a good example of the proper application of K.S.A. 60-203(b), as that statute is to be liberally construed. However, in *Grimmett v. Burke*, 21 Kan. App. 2d 638, 906 P.2d 156 (1995), *rev. denied* 259 Kan. 927 (1996), the Kansas Court of Appeals was critical of taking such a liberal approach to the application of the statute. The panel in *Grimmett* opined that under a very liberal construction of the statute, "a plaintiff *always* gets a second chance under 60-203(b) when his or her original service has been determined invalid. This would be true no matter how inept or how lacking in good faith the original service may have been." 21 Kan. App. 2d at 647. The panel in *Grimmett* then stated:

"We hold that before it can be said that service has 'purported to have been made,' it must be shown that a defendant was given actual notice of having been sued. We also conclude that the following factors should exist: (1) The original service must have 'appeared' to be valid and the returns by the sheriff's office or other process servers must indicate that the service was valid. (2) The record should show that the plaintiff believed in good faith that his or her service was valid and relied on that validity to his or her detriment. (3) The plaintiff had no reason to believe the defendant was contesting service until after the statute of limitations had run, but had no opportunity to take steps to correct the defective service." 21 Kan. App. 2d at 647-48.

In *Pieren-Abbott*, the Kansas Supreme Court adopted and approved the *Grimmett* factors, without conducting considerable

analysis. The court stated that "[t]hese factors limit the application of K.S.A. 60-203(b) in accordance with the legislature's intent to give parties a second chance at service only when the original service was declared invalid despite the fact that it gave the defendant actual notice of suit. [Citation omitted.]" 279 Kan. at 101-02.

Applying the *Grimmett* factors to Fisher's case, we must first determine whether the original service "appeared" to be valid and the return so indicated. 21 Kan. App. 2d at 647-48. The district court found that K.S.A. 60-203(b) was not applicable because the service did not appear to be valid. The district court was correct in its analysis. As explained above, Fisher's attempt to serve De-Carvalho via certified mail failed to comply with K.S.A. 60-304(a) in any respect and the return receipt indicated that an unknown third person actually received process. Thus, the first *Grimmett* factor is not satisfied.

Second, in order for K.S.A. 60-203(b) to be applicable to this case, the record must show that Fisher relied in good faith to her detriment on the validity of the service of process. 21 Kan. App. 2d at 647-48. Fisher cannot be deemed to have relied in good faith on the validity of the service of process for the same reason the service of process did not appear to be valid. The return receipt clearly indicated that DeCarvalho did not personally receive service, and the record does not indicate that Fisher attempted to determine whether the individual that actually received service was DeCarvalho's agent. Thus, the second *Grimmett* factor is not satisfied.

Finally, in order to satisfy the third *Grimmett* factor, Fisher must have been denied the opportunity to cure the defective service prior to the expiration of the statute of limitations due to De-Carvalho's failure to inform her that he was contesting service. See 21 Kan. App. 2d at 647-48. DeCarvalho argues that Fisher's inability to cure service was not a result of DeCarvalho's failure to timely contest service; instead, it resulted from Fisher's decision to file her case on the last possible day and to wait an additional 60 days before attempting to mail the process to DeCarvalho. Here, Fisher's deadline to commence her cause of action expired only a few days before DeCarvalho filed his answer which set forth several

affirmative defenses including improper service of process, lack of personal jurisdiction, and expiration of the statute of limitations. This is not a case where the plaintiff served process early, leaving sufficient time to correct any defects. Moreover, DeCarvalho did not unreasonably withhold raising his defenses; he raised them in his answer, which was timely filed. Therefore, the third *Grimmett* factor is not satisfied.

Although we could end our analysis here, we are compelled to question the "judicially created" *Grimmett* requirements for the application of K.S.A. 60-203(b), that are not found in the plain language of the statute. The Kansas Code of Civil Procedure is to be liberally construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding. See K.S.A. 60-102. However, *Grimmett* and subsequent cases that have adopted the *Grimmett* factors seem to strictly construe the requirements of K.S.A. 60-203(b). In fact, since *Grimmett* was decided, we are unable to find a single published decision where the provisions of K.S.A. 60-203(b) were applied successfully to save a case from dismissal. Kansas cases applying the *Grimmett* factors have adopted an unnecessarily restrictive view of K.S.A. 60-203(b) that is not supported by the plain language of the statute.

Nevertheless, we are unable to conclude that K.S.A. 60-203(b) is applicable to Fisher's case even when we focus only on the plain language of the statute. The provisions of K.S.A. 60-203(b) are triggered only when the original service of process "purports to have been made" but is later declared invalid. In *Hughes*, the court noted that the verb "purport" is commonly defined to mean "to have the appearance of being." 240 Kan. at 375. Although the *Hughes* court also declared K.S.A. 60-203(b) to be applicable to "any irregularity" in form or procedure or to "any defect" in making service, it is clear from the statutory language that the savings provision only applies if the original service of process purports to have been made on the defendant. See K.S.A. 60-203(b).

Here, the certified mail receipt indicated the summons and petition were mailed to DeCarvalho's business address rather than to his dwelling house or usual place of abode. The receipt also indicated that restricted delivery was not requested as required by

K.S.A. 60-304(a) for serving an individual at a business address. The most obvious defect was that the return receipt was not signed by DeCarvalho, but instead it was signed by Phyllis Bieker. The return receipt did not designate Bieker as DeCarvalho's agent, and there is no indication in the record that Bieker was authorized by appointment or by law to accept service of process on DeCarvalho's behalf. Any person taking a moment to compare the certified mail receipt with the provisions of K.S.A. 60-304(a) would immediately conclude that Fisher's service of process on DeCarvalho did *not* appear to be valid. Fisher's case does not present a situation where service of process purported to have been made but was later adjudicated to have been invalid due to an irregularity in form or procedure. Accordingly, we conclude that the district court did not err by failing to afford Fisher an additional 90 days to serve process pursuant to K.S.A. 60-203(b).

Some may argue that K.S.A. 60-203(b) should be applied to save a cause of action any time service of process is found to be defective for any reason, provided that the defendant acquired actual knowledge of the pendency of the action. However, it does not appear that the legislature set the standard that low. The provisions of K.S.A. 60-203(b) apply only when the original service of process purports to have been made but is later adjudicated to have been invalid due to any irregularity in form or procedure. It is not the function of the courts to delete the language "purports to have been made" from K.S.A. 60-203(b). Here, DeCarvalho has the right to contest the service of process and he certainly has the right to challenge the district court's jurisdiction over his person. The fact that DeCarvalho somehow became aware of the pendency of Fisher's claim is not a sufficient justification for the application of K.S.A. 60-203(b).

In summary, Fisher's attempt to serve DeCarvalho via certified mail at his business address did not constitute substantial compliance with the statutory method of service of process such that service was rendered valid under K.S.A. 60-204. Further, De-Carvalho did not make a voluntary entry of appearance when he requested additional time to file a responsive pleading, so as to render service valid under K.S.A. 60-303(e). Finally, under the

facts of this case, Fisher was not entitled to receive an additional 90 days to serve process under K.S.A. 60-203(b). For all these reasons, we conclude the district court did not err by dismissing with prejudice Fisher's cause of action against DeCarvalho on the ground that Fisher failed to properly serve process on DeCarvalho prior to the expiration of the statute of limitations.

Affirmed.

\* \* \*

PIERRON, J., concurring: I respectfully concur because I believe the majority opinion correctly states the precedent which interprets K.S.A. 60-203, K.S.A. 60-204, and K.S.A. 60-212. However, as this case indicates to me, we may have lost sight of the purpose of notice through service of process.

I first acknowledge that the statutes in question provide clear and straightforward ways to obtain good service that generally should be followed. K.S.A. 60-204 provides that substantial compliance with any method of serving process shall effect valid service provided that the party served was made aware of the pending action, notwithstanding some irregularity or omission in service.

Under the facts of this case, I believe the purposes of the statutes involved, to provide notice of the suit to the party being served, were accomplished. The office was served, the doctor was obviously informed of the suit, and just as obviously he turned it over to his attorney who proceeded to defend the case.

The fact that the rules for service were not followed meticulously is clear, but it is also clear that the doctor was provided with notice of the suit. It is true that we do not want service of process to become haphazard. However, under the facts of this case, I believe that the purposes of the service statutes were met and the entire case should not be thrown out because of the more or less technical errors in the way the doctor was actually made aware of the suit.